**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**NOT FOR PUBLICATION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MatlinPatterson Global Opportunities Partners II L.P., *et al.*, | ) | Case No. 21-11255 (DSJ) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**BENCH DECISION[2] DENYING THE FOREIGN REPRESENTATIVE'S**
**MOTION FOR ABSTENTION AND GRANTING IN PART**
**THE MOTION FOR PARTIAL RELIEF FROM THE AUTOMATIC STAY**

**A P P E A R A N C E S :**

**SEQUOR LAW, P.A.**
*Counsel for Vânio Pickler Aguiar in his capacity as*
*judicial administrator and foreign representative*
*(the "Foreign Representative")*
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
By:    Gregory S. Grossman, Esq.
        Juan M. Mendoza, Esq.

**SIMPSON THATCHER & BARTLETT LLP**
*Counsel for the Debtors and Debtors-in-Possession*
425 Lexington Avenue
New York, NY 10017
By:    Elisha D. Graff, Esq.
        Tyler B. Robinson, Esq.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: MatlinPatterson Global Opportunities Partners II L.P. (8284); MatlinPatterson Global Opportunities Partners (Cayman) II L.P. (8246); MatlinPatterson Global Partners II LLC (6962); MatlinPatterson Global Advisers LLC (2931); MatlinPatterson PE Holdings LLC (6900); Volo Logistics LLC (8287); MatlinPatterson Global Opportunities Partners (SUB) II L.P. (9209). The Debtors' address is: 300 East 95th Street, Suite 102, New York, New York 10128.

[2] This "Bench Decision" is a written variant of a decision that I might enter from the bench. I am issuing it in the interest of rendering the promptest possible decision, which necessitates a tone that at times may be less formal than other written decisions. The Bench Decision also may include less extensive or formal record and legal citations than I would provide in a more formal written decision.

**KING & SPALDING LLP**
*Counsel for GOL Linhas Aereas S.A.,*
*formerly VRG Linhas Aereas S.A.* ("VRG")
1185 Avenue of the Americas
New York, NY 10036
By:     Arthur Steinberg, Esq.
         Scott Davidson. Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

A Brazilian bankruptcy estate, through its foreign representative, appears as a creditor in the above-captioned Chapter 11 bankruptcy case, and has moved to have this Court abstain from "hearing the Debtors' intended objection" to the Brazilian estate's proof of claim, or, in the alternative, for relief from the automatic stay to permit the Brazilian estate to continue pre-petition litigation against the U.S. debtor entity in Brazil. [Abstention Mot., ECF No. 355 at 1].

Because the representative of the Brazilian debtor entity, Varig Logistica S.A. ("**VarigLog**"), fails to meet its burden to show that abstention is warranted, this Court declines to abstain from its ongoing consideration of the claim objection or other contested matters here involving the VarigLog estate (the "**VarigLog Estate**" or, interchangeably, "**VarigLog**"). VarigLog's motion fails on several points, including most fundamentally that abstention would unduly interfere with administration of the bankruptcy case currently before this Court; in fact, abstaining would essentially stop the bankruptcy pending in this Court in its tracks.

While abstention is not appropriate here, VarigLog's alternative request of targeted relief from the stay to allow resumption of at least aspects of its Brazilian litigation against the Debtor will not unduly interfere with the administration of this case, and satisfies the standards governing lift-stay applications.  Accordingly, VarigLog's motion for abstention is denied, but its alternative

request for relief from the automatic stay is lifted to the limited extent explained below, while its request for an unrestricted lifting of the stay is denied.

## BACKGROUND

Debtors are seven entities that form at least part of the MatlinPatterson corporate group. Specifically, Debtors are private investment funds (the "MP Funds") and related entities involved in fund management.

The Debtors' dispute with VarigLog arises from Debtors' investment activity in Brazil's aviation sector, which led to a variety of complex disputes that have embroiled Debtors and others for much of the last two decades.  In 2005, debtor Volo Logistics LLC, together with three Brazilian individual investors, established Volo do Brasil S.A. ("**Volo Brasil**"), which in turn purchased Brazilian aviation company VarigLog in 2006.  [ECF No. 2 at 15].

By 2008, VarigLog had fallen or was forced into financial disrepair.  Purportedly to reduce VarigLog's indebtedness to Volo Logistics, Debtors and VarigLog entered into debt assignment agreements (the "**DAAs**") which allegedly assigned $250 million in debt to another entity and released VarigLog from its obligation to repay these loans.  [Grossman Decl., ECF No. 356 Ex. F 29–56].  Debtors contend that by agreeing to the DAAs, VarigLog released and indemnified them for certain past and future liability to VarigLog.  [*See, e.g.,* Debtor's Mot. for Summ. J., ECF 507 at 8–9].

In 2009, VarigLog petitioned for reorganization in the 1st Bankruptcy Court of São Paulo (the "**Brazilian Bankruptcy Court**").  [Grossman Decl., ECF No. 356 Ex. B].  By 2012, VarigLog's efforts to reorganize had failed and the company entered liquidation.  [*Id.*].  In May

2020, the estate of VarigLog initiated an action against six of the Debtors[3] in Brazil (the "**Brazilian Action**") alleging that as a matter of Brazilian law Debtors were liable to VarigLog because their commercial conduct severely injured VarigLog's business and forced VarigLog into insolvency proceedings. *See In re MatlinPatterson Glob. Opportunities Partners II L.P.*, 644 B.R. 418, 422 (Bankr. S.D.N.Y. 2022). Asserting causes of action under various provisions of Brazil's civil, corporate, and bankruptcy codes, the VarigLog Estate claims that while Debtors did not control VarigLog on paper—owning, at the relevant time, only 20% of company's voting shares—behind the scenes, Debtors exercised control in various ways to the detriment of VarigLog. [*See* Abstention Mot., ECF No. 355 at 3, 5–8].

Upon petition of the foreign representative of VarigLog's Estate (the "**Foreign Representative**"), the Bankruptcy Court for the Southern District of Florida (the "**Florida Court**") recognized the Brazilian Bankruptcy under chapter 15 of the Bankruptcy Code. *See* [Grossman Decl., ECF No. 356 Ex. C; Bankr. S.D. Fla., 09-15717, Dkt. No. 77]. Debtors filed an adversary proceeding in the Miami-based Chapter 15 Case (the "**Chapter 15 Case**") seeking relief against the defunct VarigLog (as opposed to against the Foreign Representative or the VarigLog Estate) based on releases and indemnification provisions in the DAAs. [*See* Grossman Decl., ECF No. 356 Ex. F]. In May 2021, Debtors filed their own bankruptcy case under chapter 11 before this Court. [*See* ECF No. 1]. Later that year, the Florida Court dismissed the adversary proceeding in the Chapter 15 Case and denied as moot Debtors' alternative request for stay relief to litigate in New York. *In re Volo Logistics LLC, et al. v. Varig Logistica S.A.* (*In re Varig Logistica S.A.*), 2021 WL 5045684 (Bankr. S.D. Fla. Oct. 29, 2021).

---

[3] The Brazilian Action did not name debtor MatlinPatterson Global Opportunities Partners (SUB) II L.P. All other above captioned Debtors were named in the action.

In the present chapter 11 case before this Court, Debtors faced three substantial claims—one from an entity called VRG; one from an entity called HJDK; and the third from VarigLog. *See In re MatlinPatterson*, 644 B.R. at 421. Debtors vigorously contested all three claims, which entailed pre-petition proceedings in forums including the United States, Brazil, and the Cayman Islands. In the course of their Chapter 11 case in this Court, following mediation, Debtors reached settlement agreements with VRG and HJDK. [*See* Order Approving VRG Settlement, ECF No. 574; Order Approving HJDK Settlement, ECF No. 639]. But for the demands of the VarigLog Estate, Debtors assert they would be in position to finalize a plan, pay out their remaining funds to investors, and continue winding down their affairs in keeping with their original business plan. [Debtors' Opp., ECF No. 508 at ¶¶ 14, 19, 34]. Debtors further assert that, if they cannot reach a commercially viable settlement or negotiated claim disposition with VarigLog, they will be unable to confirm a plan.

Following Debtors' filing of their bankruptcy case in this Court, Debtors petitioned for, and the Brazilian Bankruptcy Court entered an order staying the Brazilian Action. [*See* Grossman Decl., ECF No. 356 Ex. K]. The Foreign Representative filed proofs of claim in this Court on behalf of the VarigLog Estate, and has now moved for this Court's abstention from adjudicating Debtors' "expected claim objection." [Claims Register; Abstention Mot., ECF No. 355]. Alternatively, the Foreign Representative seeks full or partial relief from the stay so it can continue litigation in Brazil, either without restriction or, at a minimum, as to certain now-pending motion practice that was suspended by virtue of the automatic stay resulting from the MatlinPatterson bankruptcy case here. [Abstention Mot., ECF No. 355].

VarigLog's requested partial relief targets three items currently pending in the Brazilian Action. [Reply, ECF No. 634 at ¶ 44]. Specifically, VarigLog seeks an order partially lifting the

automatic stay to allow the Brazilian Court to rule on (i) MatlinPatterson's motion for summary judgment based on two grounds, statute of limitations and attacking the element of domination/control, (ii) VarigLog's motion for appointment of an independent accounting expert to conduct an analysis on certain contested facts involving the allocation of funds and its consequences, and (iii) Matlin Patterson's pending interlocutory appeal of the Brazilian Court's order declaring exclusive jurisdiction over VarigLog's claim and any of MatlinPatterson's defenses.  [*Id.; see also* August 25 Ltr., ECF No. 555].

MatlinPatterson responded with briefing in opposition [ECF No. 508] and by filing a motion for summary judgment [Debtor's Mot. for Summ. J., ECF No. 507].  In brief, the parties' respective substantive contentions appear to be that the VarigLog Estate asserts entitlement under Brazilian law to compensation for commercial harm allegedly done to VarigLog and its creditors by the MatlinPatterson parties, while Debtors contend (while reserving all defenses) that any liability they may otherwise have to VarigLog or its estate is modified or eliminated by the DAAs. The VarigLog Estate meanwhile contends that, even if VarigLog waived rights against MatlinPatterson via the DAAs, the VarigLog Estate itself is a separate entity that is entitled to pursue relief in Brazilian courts even if pre-bankruptcy VarigLog would not be similarly entitled. [*See* Abstention Mot., ECF No. 355 at 2].

On October 24, 2022, the Court held a hearing on the foreign representative's motion for abstention or, in the alternative, stay relief.  [Hr'g Tr., ECF No. 666; *see* ECF Nos. 355–56 (motion, supporting memorandum, and supporting submissions)].  The Foreign Representative argued that the case law-recognized factors that courts apply to abstention motions favor granting the motion, and that certain statutory language found in chapter 15 of the Bankruptcy Code further counsels in favor of this Court extending comity to the foreign proceeding by abstaining in favor of the Brazil

6

court's conduct of the proceedings between the VarigLog estate and MP that are now pending in Brazil. [*See id.* at 22–51]. The Foreign Representative further argued that, rather than complicate administration of the MatlinPatterson bankruptcy case before this Court, the foreign proceeding would lead to definitive determinations under Brazilian law that would aid in resolving the chapter 11 case. [*See, e.g., id.* at 33:18–20, 50:3–7].

The Debtors countered that abstention is extraordinary relief that is not warranted here, particularly because Debtors' substantial progress to date leaves only the VarigLog dispute standing between Debtors and confirmation, such that the Chapter 11 case will be indefinitely delayed if the court grants abstention or delays the case here while granting substantial stay relief. [*Id.* at 67:2–6]. On one disputed issue—whether the MP entities waived their DAA-based contract defenses by not asserting those defenses earlier in the Brazil proceedings—Debtors argued or at least suggested that they reserved their rights when they alerted the Brazilian court to the DAA's forum selection clause and the pending U.S. proceedings. [*Id.* at 86:5–9]. VRG joined in MP's opposition of the motion and added that denying relief from the stay will impede the Brazilian proceeding for only a matter of months, because the Debtors are contractually obliged to seek confirmation by May 31, 2023. [*See id.* at 105:24–106:3, 115:7–12; Order Approving VRG Settlement, ECF No. 574 (May 31, 2023 outside date); Order Approving HJDK Settlement, ECF No. 639 (same)].

At the close of the hearing, the Court reserved decision.

## DISCUSSION

As the parties do not contest, the Court has jurisdiction to consider this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157.

The statutory bases for Foreign Representative's motion are 28 U.S.C. § 1334(c)(1) as to permissive abstention, and/or Bankruptcy Code section 362(d)(1) as to relief from the automatic stay. This Bench Decision considers these two requests for relief in turn.

## A. Permissive Abstention

Abstention can be either mandatory or permissive. 28 U.S.C. § 1334. Because the Foreign Representative seeks only the latter [Abstention Mot., ECF No. 355 at 16] and likely does not qualify for the former, this opinion considers only permissive abstention.

Section 1334(c)(1) governs permissive abstention and provides in relevant part that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for state law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). While the statute refers to "state law," courts have extended the law to include foreign proceedings. *See In re Bozel S.A.*, 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010). In the context of a motion for abstention in favor of a foreign proceeding, international comity is a relevant consideration in determining whether a court should decline to exercise jurisdiction. *In re CPW Acquisition Corp.*, 2011 WL 830556, at *6 (Bankr. S.D.N.Y. Mar. 3, 2011); *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.)*, 93 F.3d 1036, 1047 (2d Cir. 1996).

Because federal courts have a "'virtually unflagging obligation' to exercise the jurisdiction given them," *In re Gawker Media LLC*, 581 B.R. 754, 760 (Bankr. S.D.N.Y. 2017) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)), the abstention analysis begins with a "presumption in favor of the exercise of federal jurisdiction and against abstention," *Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004). *See In re Residential Cap., LLC*, 519 B.R.

890, 903 (Bankr. S.D.N.Y. 2014) (citing *Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Litig.)*, 628 F.Supp.2d 432, 446 (S.D.N.Y.2008)).

It is within the Court's discretion whether to grant permissive abstention. *Hellas Telecomms. (Luxembourg) II SCA v. TPG Cap. Mgmt., L.P.* (*In re Hellas Telecomms.*), 535 B.R. 543, 589 n.36 (Bankr. S.D.N.Y. 2015). In exercising this discretion, courts typically consider one or more of the following twelve factors which broadly track judicial efficiency, severability, and forum shopping concerns:

> (1) the effect or lack thereof on the efficient administration of the estate if the Court recommends abstention;
> (2) the extent to which foreign law issues predominate over bankruptcy issues;
> (3) the difficult or unsettled nature of the applicable foreign law;
> (4) the presence of a related proceeding commenced in a foreign court or other non-bankruptcy court;
> (5) the jurisdictional basis if any, other than 28 U.S.C. § 1334;
> (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
> (7) whether an asserted core proceeding is "core" in substance rather than form;
> (8) the feasibility of severing foreign law claims from core bankruptcy matters to allow judgments to be entered in a foreign court with enforcement left to the bankruptcy court;
> (9) the burden of the court's docket;
> (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties;
> (11) the existence of a right to a jury trial; and
> (12) the presence in the proceeding of non-debtor parties.

*In re Tronox*, 603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019) (collecting cases).

When assessing whether to grant abstention on a permissive basis, Courts have considered one or more of these factors, and not necessarily all twelve. *Id.* (citing *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y. 2002)). It follows that a court "need not plod through a discussion of each factor in the laundry lists developed in prior decisions." *Id.* (internal quotation marks omitted). "The movant bears the burden of establishing that permissive abstention is warranted." *In re Residential Cap., LLC*, 515 B.R. 52, 67 (Bankr. S.D.N.Y. 2014); *In re Waterscape Resort LLC*, 2013 WL 819748, at *2 (Bankr. S.D.N.Y. Mar. 5, 2013).

Here, the Court concludes upon consideration of these factors that the Court should not abstain in favor of the Brazilian proceedings. Because Debtors' dispute with the VarigLog Estate is the only significant dispute remaining in this bankruptcy case, and because its resolution or at least deciding the treatment of the VarigLog Estate's claim and entitlements is necessary for the bankruptcy case here to conclude via plan confirmation or otherwise, abstention would be overwhelmingly detrimental to the estate's administration; in fact, there is a good chance that it would doom Debtors' bankruptcy. The dispute is closely related—in fact central—to Debtors' bankruptcy case before this Court, and it is infeasible to sever the foreign law claims from the controlling issues of this bankruptcy case. No other factor points as strongly in favor of abstention. Notwithstanding that *Tronox* instructs that courts need not "plod through" each factor recognized by the case law, the Court does so, and observes as follows:

*(1) the effect or lack thereof on the efficient administration of the estate*

This factor weighs powerfully against abstention. Debtors have reached settlements conditioned on prompt resolution of their bankruptcy case, and, to be able to achieve a confirmable plan, they need to secure a consensual or adjudicated disposition of the VarigLog Estate's claim that, if allowed at all, can be compensated via a confirmable plan that will also adequately provide for the entitlements of other claimants, all out of a finite pool of Debtor funds. The motion for abstention narrowly focuses on the disagreement between VarigLog and MatlinPatterson without concern for the "broader need to achieve an effective reorganization and the expeditious resolution of the rights of all parties in interest." *In re Diocese of Buffalo, N.Y.*, 616 B.R. 10, 12 (Bankr. W.D.N.Y. 2020) (declining to abstain permissively where a parallel state-court action threatened efficient administration of the bankruptcy estate as a whole and, by retaining jurisdiction, the Bankruptcy court could ensure a prompt and efficient resolution). Abstaining to permit the

VarigLog estate to litigate the case's sole remaining issue in Brazil with no known date by when an outcome would be achieved is antithetical to the prompt and efficient resolution of Debtors' bankruptcy case before this Court.

Further, abstention would not serve the interest of efficient estate administration because it would not necessarily relieve the VarigLog estate of the need to litigate in the U.S. The Foreign Representative concedes that this Court has jurisdiction over Debtor's assets. [*See, e.g.,* Abstention Mot., ECF No. 355 at ¶ 46]. Even if the Brazilian Action moves forward and the VarigLog Estate prevails, the Foreign Representative will have to return to U.S. court to enforce a judgment of the Brazilian Bankruptcy Court against Debtors' U.S. assets. The Foreign Representative has conceded as much. *See* [ECF Nos. 666 ("a judgment by the Brazilian bankruptcy court . . . certainly is not going to be self-effectuating"), 70 Ex. F at 39:3–4, 39:22–40:4, 72:16–73:1].

*(2) the extent to which foreign law issues predominate over bankruptcy issues*

This factor is contested and unknown; the VarigLog Estate has not met its burden of showing that Brazilian law issues predominate over bankruptcy issues. The Court credits the VarigLog Estate's arguments that its underlying claims against MatlinPatterson arise under Brazilian law, and that VarigLog's response to MatlinPatterson's defenses under the DAAs may or may not also turn on Brazilian law, or at least be influenced by Brazilian law, to the extent it requires considering whether the VarigLog Estate has different rights and entitlements from the pre-bankruptcy VarigLog entity. On the other hand, Debtors argue that the DAAs are governed by New York law and include New York forum selection provisions, and VarigLog's waivers or releases under the DAAs form a central part of Debtors' contentions before this Court. Thus, while

11

Brazilian law clearly is at least potentially important to the parties' dispute, so is United States and specifically New York law, and the Court cannot conclude that Brazilian law "predominates."

> *(3) the difficult or unsettled nature of the applicable foreign law*

The VarigLog Estate has not made a specific showing that the Brazilian-law issues raised by the parties' dispute are particularly difficult or unsettled. Rather the parties argue that the dispute involves a blend of U.S. and Brazilian law. This Court is experienced in and capable of applying other nations' laws as needed, often with guidance of experts in the relevant area of foreign law. It is not clear at the present stage that doing so would present serious adjudicatory difficulties for this Court.

> *(4) the presence of a related proceeding commenced in a foreign court or other non-bankruptcy court*

This factor is satisfied. The VarigLog Estate is engaged in proceedings in Brazil that include litigation against most of the MatlinPatterson debtor entities. As discussed both above and below, the Court nevertheless concludes that this factor is outweighed by others in the circumstances of this case.

> *(5) the jurisdictional basis if any, other than 28 U.S.C. § 1334*

Section 1334 grants district courts "original and exclusive jurisdiction of all cases under title 11." 28 U.S.C § 1334(a). This obviously forms the basis of this Court's jurisdiction; "core proceedings arising under title 11" are statutorily defined as including the "allowance or disallowance of claims against the estate" and "estimation of claims or interests for the purposes of confirming a plan." 28 U.S.C. § 157(b). Debtors contend that some other basis of this Court's jurisdiction exists, but this Court has not determined that any such basis exists, and, for purposes of resolving this motion, assumes that section 1334 is this Court's sole jurisdictional basis to

consider the bankruptcy case. The Court nevertheless concludes that this factor is outweighed by others that weigh against abstention.

*(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case*

This factor strongly weighs against abstention. As discussed, the Brazilian proceeding is inseparable from the central remaining issue in this bankruptcy case, which is the last meaningful issue standing between Debtors and plan confirmation, which would benefit all constituencies of Debtor with the possible exception of the VarigLog Estate.

*(7) the substance rather than the form of an asserted "core" proceeding*

This factor weighs against abstaining, because the "core" proceeding that the VarigLog Estate proposes this Court abstain from adjudicating is not just formally "core," but is the single most important remaining issue in this case, whose disposition is critical to the possible success of the entire case.

*(8) the feasibility of severing foreign law claims from core bankruptcy matters to allow judgments to be entered in a foreign court with enforcement left to the bankruptcy court*

This factor weighs against abstention. The proposed abstention concerns the most important unresolved issue in the Chapter 11 case. Waiting for completion of a lengthy litigation elsewhere would effectively prevent Debtors from pursuing confirmation of a plan.

*(9) the burden of the court's docket*

This factor does not weigh in favor of abstention. The Court's workload does not preclude timely and effectively adjudicating the parties' dispute, and Debtors' bankruptcy overall, which turns in large part on the outcome of the parties' dispute.

*(10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties*

This factor considers the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties. The Court does not give serious

weight to this issue in either direction. Debtors prefer to litigate in this Court as the most effective venue for resolving their bankruptcy case, which was properly brought in this Court. Meanwhile, the VarigLog Estate prefers to litigate in the Brazilian court where its insolvency is proceeding. The Court does not perceive either party to be engaged in improper forum shopping. *Cf. In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 600 (Bankr. S.D.N.Y. 2021) (factor neutral where both parties engaged in some form of forum selection strategy).

(11) *the existence of a right to a jury trial*

This factor is inapplicable to this dispute. If a right to jury trial existed, could only be provided in the other proposed jurisdiction, and would be prejudiced by a failure to abstain, this factor would weigh in favor of abstaining. *See In re Republic Reader's Serv., Inc.*, 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987) (right to a jury trial is "indicative that . . . a state law claim lies at the heart of the action"). This consideration is not present here. In fact, the VarigLog Estate's Foreign Representative concedes this factor is neutral. [Abstention Mot., ECF No. 355 at ¶ 68].

(12) *the presence in the proceeding of non-debtor parties*

There are no non-debtor parties in the Brazilian proceeding that the VarigLog Estate wishes to pursue while having this Court abstain from considering the same parties' dispute here. The Foreign Representative concedes this factor weighs against abstention. [Abstention Mot., ECF No. 355 at ¶ 69].

Thus, by the Court's tally, the first, sixth, seventh, and eighth factors all counsel against abstention to an extraordinarily strong degree in this case. All concern, in varying ways, the impact that abstaining would have on the U.S.-based bankruptcy proceeding, and the infeasibility of severing the dispute so that another nation's court could proceed in a way that does not unduly interfere with the U.S.-based bankruptcy proceeding. Here, the impact on the bankruptcy before

14

this Court, the Debtors, and all parties with an interest in the resolution of this bankruptcy case would be profound.  Meanwhile, other factors are not established or are weak.  These include the second factor (because although significant Brazilian law questions are raised, significant U.S. law issues also are present, so it is difficult to say that Brazilian law predominates); the third (because the VarigLog Estate has not shown that the Brazilian law issues are unsettled or difficult); and the tenth (because although VarigLog complains this entire bankruptcy is an exercise in forum shopping, Debtors are exercising their existing rights in this proceeding, and they are no less entitled to seek relief in their chosen forum than VarigLog is entitled to seek relief in Brazil).  Other factors appear irrelevant, or, put another way, do not present a reason to abstain that may exist in other situations; these factors include the ninth (the dispute does not present an unmanageable strain on this Court's docket); the eleventh (proceeding in this Court does not deprive any litigant of a right to a jury trial); and the twelfth (there are no non-debtor parties whose interests might impact the Court's assessment of whether to abstain).

In the face of these strong reasons not to abstain and the neutrality of other factors, the limited considerations otherwise favoring abstention do not justify doing so here.  These include the fourth factor (there unquestionably is a proceeding pending in Brazil, and one that predates Debtors' bankruptcy here) and the fifth (what this Court assumes to be a lack of any jurisdictional basis for its proceeding other than section 1334).  But these considerations simply do not outweigh the strong reasons for this Court not to cede control or decline to adjudicate the respective entitlements of Debtors and the VarigLog Estate so as to permit the timely resolution of Debtors' bankruptcy.

Lastly, the Foreign Representative argues that abstention should also be granted based on principles of international comity, so as to avoid unduly interfering with the Brazilian court's

15

authority and the important proceedings pending there. [Abstention Mot., ECF No. 355]. The Court expresses the utmost respect for its sister court in Brazil, but does not agree that principles of comity call for abstention in this case.

Further, this case presents an unusual dynamic in which principles of comity in some ways may favor adjudicating here, even if in some ways they may favor adjudicating in Brazil. More typically in abstention motions, a U.S. court is being asked to abstain from resolving a matter whose impact is greater abroad than it is on the main U.S.-based bankruptcy proceeding in which the abstention motion is raised. In fact, in the typical Chapter 15 scenario, there is no U.S. main bankruptcy case, and this Court assists the conduct of an insolvency proceeding pending in another nation. Here, while there is assuredly a Brazilian proceeding that is impacted by the proceeding here, the Brazilian court likewise must contend with the fact that the U.S.-based bankruptcy of Debtors may be severely impacted by the Brazilian proceedings. The Brazilian proceeding represents an effort by the VarigLog Estate to secure a judgment entitling it to Matlin Patterson assets for the benefit of that estate, and there is no particular deadline known to this Court when that process must be complete. By contrast, in the commercial circumstances present here, the proceeding in this Court must be resolved by Spring 2023, a matter of just a few months. Abstaining to permit un-time-limited litigation to unfold in Brazil risks devastating the Debtors and other parties in interest, whose ability to successfully complete their bankruptcy and secure distributions may be destroyed in the absence of prompt resolution of the Debtors' obligations to the VarigLog estate for purposes of the bankruptcy. In these circumstances, as a practical matter, the interests of comity do not favor abstaining so that the parties' dispute can be resolved in Brazil, notwithstanding that Brazil is where the Debtors engaged in business and where the dispute was

first joined, especially because abstaining would almost surely cause the failure of Debtors'

bankruptcy case in this Court.

### B. Stay Relief

Alternatively, or in addition to abstention, the Foreign Representative requests relief from

the stay so it may continue litigating against MP in the Brazilian Action, either without limitation

or with respect to discrete applications and/or issues that were pending as of the date that

MatlinPatterson commenced its Chapter 11 bankruptcy case. For reasons detailed below, the Court

declines to lift the stay in a way that sets no topical limitations, but does lift the stay to allow

resumed litigation of two specific, already-pending aspects of the Brazilian proceedings.

The Bankruptcy Code provides that courts shall grant relief from the stay "for cause." 11

U.S.C. § 362(d)(1). To determine whether sufficient "cause" supports granting stay relief to allow

pre-petition litigation to proceed in another court, courts in this district consider the following

twelve factors (the "**Sonnax Factors**") set forth in *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286

(2d Cir. 1990):

> (1) whether relief would result in a partial or complete resolution of the issues;
> (2) lack of any connection with or interference with the bankruptcy case;
> (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
> (5) whether the debtor's insurer has assumed full responsibility for defending [the action];
> (6) whether the action primarily involves third parties;
> (7) whether litigation in another forum would prejudice the interests of other creditors;
> (8) whether the judgment claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
> (10) the interests of judicial economy and the expeditious and economical resolution of litigation;
> (11) whether the parties are ready for trial in the other proceeding; and
> (12) the impact of the stay on the parties and the balance of harms.

17

*See In re Sterling*, 14-12608-SHL, 2018 WL 313085, at *5 (Bankr. S.D.N.Y. Jan. 5, 2018) (applying the Sonnax Factors); *In re Project Orange Associates, LLC*, 432 B.R. at 104. 73. "Not all of the factors are relevant in every case" and "the Court need not assign equal weight to each factor." *In re Breitburn Energy Partners LP*, 571 B.R. 59, 64 (Bankr. S.D.N.Y. 2017) (citations omitted); *see also In re Containership Co. (TCC) A/S*, 466 B.R. 219, 226 (Bankr. S.D.N.Y. 2012) ("The decision whether to lift the stay is entirely within the discretion of the Court, and the Court need only consider the relevant factors in making its determination.").

In deciding whether to lift a stay and allow a creditor to continue litigation in another forum, a bankruptcy court should consider the "particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." *In re Containership*, 466 B.R. at 226 (quoting *In re Touloumis*, 170 B.R. 825, 828 (Bankr.S.D.N.Y.1994)). "The burden of proof on a motion to lift or modify the automatic stay is a shifting one" and rests initially on the moving party to make a showing of "cause" for relief. *In re Sonnax Indus.*, 907 F.2d at 1285; *In re Mazzeo*, 167 F.3d 139, 142 (2nd Cir. 1999). In the event "the movant fails to make an initial showing of cause ... the court should deny relief without requiring a showing from the debtor that it is entitled to continued protection." *In re Sonnax Indus.*, 907 F.2d at 1285.

VarigLog argues that it has established cause for lifting the stay under the Sonnax Factors, either completely or partially, to allow the Foreign Representative to proceed with some or all of the Brazilian Action. Partial relief, in VarigLog's characterization, would "allow the Brazilian court to rule on three pending items" that were suspended by virtue of the automatic stay resulting from the MatlinPatterson bankruptcy. VarigLog leads, however, with a broad request that the Brazil bankruptcy proceeding and litigation involving MatlinPatterson be allowed to resume without restriction. VarigLog's request for narrower relief is presented in the alternative,

specifically, to allow the Brazilian court to rule on: Debtors' (meaning MatlinPatterson's) pending motion for summary judgment in Brazil based on two grounds, statute of limitations and an asserted failure or inability of VarigLog to establish the element of domination/control; VarigLog's motion for appointment of an independent accounting expert to conduct an analysis on certain contested facts involving the allocation of funds and its consequences; and Debtors' pending interlocutory appeal of the Brazilian Court's order declaring exclusive jurisdiction over VarigLog's claim and any of Debtors' defenses.  [Reply, ECF No. 634 at ¶ 44; *see* August 25 Ltr., ECF No. 555].

Turning to the Sonnax Factors, VarigLog concedes that factors 2 (lack of any connection with or interference with the bankruptcy case), 6 (whether the action primarily involves third parties), 8 (whether the judgment claim arising from the other action is subject to equitable subordination), 9 (whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor), and 11 (whether the parties are ready for trial in the other proceeding) are inapplicable, neutral, or weigh against stay relief.  For reasons discussed immediately below, the Court concludes that cause for a limited-scope lifting of the automatic stay exists in light of the remaining factors, but that VarigLog's request for unlimited relief is not appropriate:

*(1) whether relief would result in a partial or complete resolution of the issues*

Considering this factor in the particular circumstances of the case, unlimited relief from the stay would not result in resolution of the issues in a manner that is "just to the claimants, the debtor and the estate."  *In re Containership*, 466 B.R. at 226.  Debtors project that resolving VarigLog's litigation in Brazil overall could take many years, and they observe that this delay would be essentially fatal to MatlinPatterson's attempt to secure relief in its Chapter 11 proceeding. In response, VarigLog was unable to assure the Court that in fact its Brazilian litigation will be

19

resolved by any time certain, and certainly not within the time frame necessary to permit any possible commercially useful continuation of the MatlinPatterson bankruptcy case in this Court. Thus, because there is no known date by when an outcome would be achieved and it appears certain that the overall Brazilian dispute cannot be resolved in time to permit necessary progress in the MatlinPatterson bankruptcy, at this time full resumption of litigation in the Brazilian Action would fail to resolve the issues in a manner within the limited time necessary to resolve the Chapter 11 case, nor in a manner that is "just to the claimants, the debtor and the estate." *In re Containership*, 466 B.R. at 226. Further, given the relatively compressed timeline under which the MatlinPatterson bankruptcy is operating, this Court's decision not to lift the automatic stay in an unrestricted way will have a limited effect on the Brazil proceedings, which, unless developments here warrant otherwise, will likely be able to resume this spring upon the anticipated resolution of the MatlinPatterson bankruptcy case.

However, partial relief from the stay to allow the continuation of certain now-pending motion practice would permit the resolution of discrete issues in a way that could be efficient, relatively prompt, and fair to the parties in interest; and, even if those issues are not resolved in the Brazilian proceeding by the time Debtors here hope to have the Court confirm a plan, the impact on proceedings here would appear to be modest. In other words, resumed consideration of a pending motion raising defenses relating to timeliness and domination/control might yield a timely disposition from the Brazilian courts that may assist this Court in better assessing VarigLog's claim, and, even if no such prompt resolution materializes, the Estate and its creditors will not have been meaningfully disadvantaged by the Court's having eliminated an impediment to the Brazilian courts' consideration of this issue. The same is true of a pending or noticed appeal from a prior court decision in Brazil asserting exclusive jurisdiction of matters relating to the VarigLog

insolvency, seemingly including VarigLog's claims against MatlinPatterson. The Court is not persuaded, however, that the request for appointment of an expert accountant to conduct an overall systemic review of MatlinPatterson and related issues is likely to yield a reasonably prompt outcome, nor that such an undertaking would not interfere with or prejudice the conduct of the bankruptcy case here. And indeed, counsel for the VarigLog Foreign Representative acknowledged during oral argument that VarigLog may not ultimately opt to pursue the expert appointment in the evolved circumstances of the case, although that comment did not constitute a withdrawal of VarigLog's request for such relief. [Hr'g Tr., ECF No. 666 at 118:7–11].

Accordingly, the first factor weighs against the broader relief asserted, but weighs in favor of providing limited stay relief solely to allow resumed consideration of MatlinPatterson's summary judgment motion pending in Brazil as to issues of timeliness and domination/control, and to allow a resumption of MatlinPatterson's pending appeal from an earlier jurisdictional ruling of the Brazilian court.

*(3) whether the other proceeding involves the debtor as a fiduciary*

While the Brazilian action claims that Debtor owed fiduciary duties to VarigLog based on the Debtor's pre-petition relationship to VarigLog, Debtor is not involved in the Brazilian litigation as a fiduciary of its own or any other estate. This factor thus weighs against any form of stay relief.

*(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action*

The parties do not agree whether the Brazilian court presiding over VarigLog's insolvency proceedings is a specialized tribunal as that term is contemplated by this Sonnax Factor. The parties agree that at least one of the claims brought in the Brazilian Action arises under the Brazilian Bankruptcy Code. However, the claims and defenses admittedly implicate other fields

of Brazilian law as well as at least the specter of New York State law and U.S. law. Thus, the

Court views this factor as neutral, or, at most, as modestly favoring lifting the stay.

*(5) whether the debtor's insurer has assumed full responsibility for defending the action*

This factor is contested and unknown. The Foreign Representative originally questioned

the applicability of this factor [Abstention Mot., ECF No. 355 at ¶ 79] and later argued its likely

applicability [Reply, ECF No. 634 at ¶ 42].

*(7) whether litigation in another forum would prejudice the interests of other creditors*

As explained above, abstention would prejudice the interests of other creditors by

precluding the successful or timely resolution of the MatlinPatterson Chapter 11 case pending in

this Court. An unrestricted lifting of the automatic stay would likewise prejudice creditors here

by causing the state to incur expense and divert resources to proceedings in Brazil that appear

essentially certain to remain unresolved within the limited expected remaining duration of the

Chapter 11 case.

However, partial relief in the form sought would not unduly harm creditor interests in the

Chapter 11 case. A resumption of Brazilian judicial consideration of MatlinPatterson's pending

appeal and its motion for summary judgment may prove useful to this Court's consideration of the

bankruptcy here, and, in this Court's judgment, resumed activity if limited to those two issues will

not unduly impose on MatlinPatterson estate resources or focus. To put it colloquially, a lifting of

the automatic stay limited to those two aspects of the Brazilian case can't hurt (at least not much)

and might help the Chapter 11 case and MatlinPatterson's creditors, because Brazil's courts may

resolve issues and narrow the issue that this Court otherwise would need to resolve.

*(10) the interests of judicial economy and the expeditious and economical resolution of litigation*

As stated in the prior section, a limited lifting of the automatic stay "can't hurt and might help," the impact on judicial resources and the parties' litigation burdens would be relatively slight, and the potential benefit of resumed litigation in Brazil and possible greater clarity on the application of Brazilian law to the parties' dispute all suggest that this factor favors a limited lifting of the automatic stay.

By contrast, the broader, unrestricted lifting of the stay that VarigLog proposes would be contrary to the interests of judicial economy and expeditious, economical resolution of litigation. Lifting the stay would run a serious risk of simultaneous, overlapping litigation of the same issues in two courts, notwithstanding that all parties agree (or do not dispute) that the Brazilian proceeding will not conclude in time for a definitive resolution to be known before the expected culmination of the bankruptcy case here. That prospect of duplicative proceedings would waste both judicial resources (whether here or in Brazil or both), and party resources.

*(12) the impact of the stay on the parties and the balance of harms*

For reasons already discussed, continuation of the stay will not have undue impact on or prejudice to the parties, and the balance of harms weigh in favor of retaining the stay as opposed to a blanket lifting of the stay. The bankruptcy case in this Court can and must progress whether the stay is in place or not. Debtors are seeking summary judgment from this Court as to some or all of the claim of the VarigLog Estate, and, if that motion does not fully resolve VarigLog's entitlements against Debtors, a claim estimation or claim objection trial is likely in short order. That will be true whether litigation is or is not also proceeding in Brazil. Thus, the Court concludes that maintaining the stay and avoiding burdensome, duplicative litigation that will not resolve in

time to inform the proceedings in this Court is a net positive as to all parties' interests in efficient and orderly dispute resolution.

By contrast, while the Court does not believe it would be highly prejudicial to maintain the stay as to the more limited issues that VarigLog proposes be permitted at a minimum, there is a degree of prejudice. It appears that those limited issues are the next steps to be pursued in the course of the VarigLog insolvency proceeding in Brazil (or at least the aspects of that proceeding that involve VarigLog claims against MatlinPatterson). VarigLog wishes to continue pursuing those matters. The Court believes it important to avoid unnecessary disruption of the Brazilian proceedings, and believes that a degree of prejudice can be avoided by lifting the stay to the limited extent of allowing resumed litigation of the pending jurisdictional, timeliness-related and domination/control issues that are presently pending before the Brazilian courts.

While the Sonnax Factors on the whole counsel against complete stay relief, the first, fourth (to a limited extent), seventh, tenth, and twelfth factors weigh in favor of allowing limited stay relief as proposed by VarigLog. Accordingly, the Court will lift the stay to the extent necessary to allow parties to proceed with and the Brazilian Court to rule on two pending issues or applications—the pending appeal from a jurisdictional ruling of the Brazilian bankruptcy court, and the pending motion concerning issues of timeliness and domination/control.

## CONCLUSION

For the reasons stated above, VarigLog's Motion is DENIED in full as to abstention, and GRANTED IN PART AND DENIED IN PART as to stay relief. The stay is hereby lifted to allow the parties to take any steps necessary to complete judicial consideration by the 1st Bankruptcy Court of São Paulo, or other Brazilian courts, of two pending issues or applications: (1)

MatlinPatterson's pending motion for summary judgment; and (2) Debtors' pending interlocutory

appeal of the Brazilian Court's order declaring exclusive jurisdiction over VarigLog's claim and

any of Debtors' defenses.  Other than to that limited extent, VarigLog's motion to lift the stay is

DENIED.

     Debtors are to settle an order consistent with the ruling set forth in this Bench Decision.


Dated:   New York, New York
       December 16, 2022

                                *s/ David S. Jones*
                         HONORABLE DAVID S. JONES
                         UNITED STATES BANKRUPTCY JUDGE