**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | **NOT FOR PUBLICATION** |
|  | ) |  |
|  | ) | Chapter 11 |
| MatlinPatterson Global Opportunities Partners II L.P., *et al.*, | ) | Case No. 21-11255 (DSJ) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**BENCH DECISION[2] AND ORDER DENYING (I) DEBTORS' MOTION FOR
SUMMARY JUDGMENT (ECF No. 507) AND (II) CREDITOR VARIGLOG ESTATE'S
CROSS-MOTION FOR SUMMARY JUDGMENT (ECF No. 734)**

**A P P E A R A N C E S :**

**SIMPSON THACHER & BARTLETT LLP**
*Counsel for the Debtors and Debtors-in-Possession*
425 Lexington Avenue
New York, NY 10017
By:     Elisha D. Graff, Esq.
          Tyler B. Robinson, Esq.

**SEQUOR LAW, P.A.**
*Counsel for Vânio Pickler Aguiar in his capacity as judicial administrator and foreign
representative of the Bankruptcy Estate of Varig Logistica S.A.*
1111 Brickell Avenue, Suite 1250
Miami, FL 33131
By:     Gregory S. Grossman, Esq.
          Juan M. Mendoza, Esq.

**KING & SPALDING LLP**
*Counsel for GOL Linhas Aereas S.A., formerly VRG Linhas Aereas S.A. ("VRG")*
1185 Avenue of the Americas
New York, NY 10036
By:     Arthur Steinberg, Esq.

---

[1]  The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: MatlinPatterson Global Opportunities Partners II L.P. (8284); MatlinPatterson Global Opportunities Partners (Cayman) II L.P. (8246); MatlinPatterson Global Partners II LLC (6962); MatlinPatterson Global Advisers LLC (2931); MatlinPatterson PE Holdings LLC (6900); Volo Logistics LLC (8287); MatlinPatterson Global Opportunities Partners (SUB) II L.P. (9209).  The Debtors' address is: 300 East 95th Street, Suite 102, New York, New York 10128.

[2]  The Court issues this Bench Decision in lieu of a more elaborate written decision in the interest of prompt resolution of a time-sensitive dispute, given pending case management deadlines and a rapidly approaching negotiated deadline for plan confirmation.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion for summary judgment filed by Debtors ("**MatlinPatterson**")

seeking an order disallowing the claim of a creditor known as the Bankruptcy Estate of Varig

Logistica S.A. (the "**VarigLog Estate**") that itself is in insolvency proceedings in its home country

of Brazil.  MatlinPatterson's motion, in essence, argues that any claim against them is precluded

by a release, because, before Varig Logistica S.A. ("**VarigLog**") commenced its Brazil insolvency

proceeding, MatlinPatterson affiliates that had a stake in VarigLog entered a "Debt Assumption

Agreement" ("**DAA**") that relieved VarigLog of $250 million of debt by transferring its debt

obligations to a different entity, in exchange for which VarigLog granted a broad release to one or

more MatlinPatterson entities whose Chapter 11 proceedings are now before this Court.  The

VarigLog Estate opposes the motion and cross-moves for summary judgment, emphasizing

primarily that, in the VarigLog Estate's view, MatlinPatterson has waived the right to any defense

based on the releases or any other DAA provision by failing to assert such a defense in the Brazil

litigation brought by the VarigLog Estate that forms the basis of the claim.  The VarigLog Estate

argues in the alternative that, to the extent MatlinPatterson preserved its DAA-based defense, the

DAA releases bind only prepetition VarigLog and do not apply to the claims raised by VarigLog's

bankruptcy estate.  The VarigLog Estate also contends that the DAA is unenforceable because it

was the product of "overmastering influence," *i.e.*, such extensive corporate control over VarigLog

by MatlinPatterson that the entire DAA transaction is presumptively invalid, and does not give rise

to a valid release.

For reasons detailed below, the Court denies both MatlinPatterson's motion for summary

judgment and the VarigLog Estate's cross-motion, but grants partial summary judgment on some

non-dispositive issues pursuant to Federal Rule of Civil Procedure 56(g).  In brief, the Court

2

concludes that the VarigLog Estate has not established the existence of a genuine dispute of material fact as to the DAA's validity based on its contention that the DAA was the product of "overmastering influence"; that by its plain terms, the DAA including its release and indemnification provisions applies to the VarigLog Estate because the VarigLog Estate's claims against MatlinPatterson are based on asserted entitlements that the VarigLog Estate obtained or holds "through" pre-insolvency VarigLog; that MatlinPatterson has waived the right to rely on DAA release defenses in Brazil litigation that the VarigLog Estate has commenced; but that, for reasons detailed below, neither party has conclusively demonstrated whether MatlinPatterson's waiver of DAA-based defenses in Brazil does or does not preclude its enforcing some or all of its asserted DAA entitlements in the claim dispute pending in this Court.

## SUMMARY OF FACTS SIGNIFICANT TO DISPOSITION OF MOTION AND PARTIES' CONTENTIONS

This case arises from a long-running dispute between a group of related debtor entities that collectively constitute a private equity firm that is a debtor in Chapter 11 proceedings in this Court, on the one hand, and the estate of a failed Brazilian aviation concern known as the VarigLog Estate, on the other. This Decision and Order refers to the U.S. debtor entities as "MatlinPatterson."

This Decision assumes familiarity with the parties' underlying dispute and contentions, which have been the subject of extensive litigation and prior decisions. *See, e.g.*, *In re MatlinPatterson Glob. Opportunities Partners II L.P.*, 644 B.R. 418 (Bankr. S.D.N.Y. 2022); *In re MatlinPatterson Glob. Opportunities Partners II L.P.*, No. 21-11255, 2022 WL 17744002, at *7 (Bankr. S.D.N.Y. Dec. 16, 2022). This Decision recites only key factual background that is central to its analysis.

MatlinPatterson invested funds on behalf of investor limited partners, in hopes of realizing profits that would fund distributions to MatlinPatterson's investors and revenues for the firm. One such MatlinPatterson fund invested in Brazilian aviation businesses, and became embroiled in serious disputes. One of MatlinPatterson's Brazilian investments was in an aviation company called VarigLog, which eventually failed, going into insolvency proceedings in Brazil in 2009 that converted to a liquidation proceeding in or about 2012.

In 2020, the Brazilian bankruptcy estate of what had been VarigLog commenced an action in a Brazil commercial court under two Brazilian commercial law provisions, referred to as Article 82 and Article 50, alleging commercial misconduct on the part of MatlinPatterson that allegedly caused financial harm to VarigLog and/or its creditors, as a result of which MatlinPatterson allegedly is liable to the VarigLog Estate in an amount greater than $380 million. [ECF No. 356 ("**Grossman Decl. I**"), Ex. A (complaint in the Brazil action)].

Faced with this and two other major suits flowing from its activities in Brazil, MatlinPatterson filed for Chapter 11 protection in this Court in 2021. The VarigLog Estate filed a proof of claim in the amount of $386,861,667.15, representing the amount to which the VarigLog Estate asserts entitlement through its pending Brazil action. [Claims Register, Claims 4-1–6-1]. MatlinPatterson timely objected to the VarigLog Estate's claim pursuant to section 502 of the Bankruptcy Code and Bankruptcy Rule 3007. [ECF No. 392]. Two other creditor entities also filed substantial proofs of claim against the MatlinPatterson debtors. MatlinPatterson has negotiated settlements with the two other major creditors, leaving just MatlinPatterson's dispute with the VarigLog Estate standing between the MatlinPatterson debtors and their ability to pursue confirmation of a plan.

Following extensive discovery and earlier motion practice, on February 1, 2023, the Court heard argument on MatlinPatterson's motion for summary judgment as to the claim of the VarigLog Estate. [ECF No. 507]. The motion's core contention is that, before VarigLog commenced insolvency proceedings in Brazil, VarigLog entered into the DAA, by which an affiliate of MatlinPatterson assumed $250 million of debt from VarigLog, while VarigLog granted releases in favor of Debtor Volo Logistics LLC ("**Volo LLC**") and its affiliates, including all the MatlinPatterson debtor entities whose bankruptcies are pending in this Court. [*Id.; see* Grossman Decl. I at 370–382 of 912 (DAA signed by VarigLog, VoloBr, and Volo LLC); ECF No. 392 at 34–203 of 203 ("**Graff Decl.**"), Ex. A (same)]. MatlinPatterson contends that the DAA release provision precludes the claims of the VarigLog Estate here, because the DAA bars all claims against MatlinPatterson as an "intervening-consenting party," and because the release agreement deems releasors not just "VarigLog," but also its successors and, as MatlinPatterson asserts, "anyone" who takes or asserts a claim "by or through" VarigLog. [*See* DAA at 1, 4].

The DAA's release provision states that "Releasors," as defined in the agreement, release entities, which undisputedly encompass the MatlinPatterson debtors here, from:

> all claims, actions, suits, causes of action demands, debts, and liabilities, whether direct or derivative liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, now existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to date of execution of this Agreement any way relating to Releasor and its affiliates (other than VarigLog or VoloBr) that could have been asserted at any time, past, present or future by or on behalf of the Releasor, against Releasees.

[DAA ¶ 4(b)]. As will be seen, one contested point here is whether the VarigLog Estate is a "Releasor" within the meaning of the DAA. The DAA defines "Releasor" as "VarigLog and its predecessors; successors; assigns; current and former affiliates and subsidiaries, and each of their

respective current and former directors, officers and employees, agents and anyone claiming by or through any of the foregoing."  [DAA ¶ 4(a)].

Three other DAA provisions enter into the Court's analysis below, and so bear explanation now.  First, the DAA has a "no waiver" provision, which provides:

> Any delay of any Party in demanding the performance by the other Party(ies) of the obligations set forth in this Agreement will not affect its right to demand such performance at a later time.  No waiver by any of the Parties of the rights contained in this Agreement shall be valid and binding unless such waiver shall be in writing signed by the Party waiving its rights.

[DAA ¶ 11(ii)].

Second, the DAA includes an "Indemnification" provision, by which VarigLog agreed to indemnify affiliates such as MatlinPatterson from "any and all claims, damages, losses, liabilities, debts or expenses incurred by any of the Indemnitees as the result of any action or claim (or threatened action or claim) by any person against any of the Indemnitees in any way relating to any Indemnitees' transactions or relationship with VarigLog."  [DAA ¶ 4(c)].

Third, the DAA includes choice of law and forum selection clauses that specify that the DAA is to be construed according to New York law, and that "[a]ny action or proceeding to interpret or enforce" the DAA "may" be brought in the courts of New York, with all parties consenting to the personal jurisdiction of New York courts.  [DAA ¶¶ 8–9].  The agreement also specified, however, that Volo LLC, an affiliate of MatlinPatterson and a named Debtor in this case, could commence an action to enforce the DAA in Brazil.  [DAA ¶ 8].  The DAA nowhere explicitly precluded VarigLog from commencing an action against MatlinPatterson entities in Brazil; the forum selection clause simply authorized and established the parties' consent to litigation in New York of "any action or proceeding to interpret or enforce" the DAA's requirements.  [DAA ¶ 8].

The VarigLog Estate contends that MatlinPatterson failed to raise DAA-based defenses in the action that the VarigLog Estate commenced in Brazil, and that, as a result, MatlinPatterson assertedly has waived and is precluded from raising any defense here or anywhere else based on the DAA, including the DAA release provision. [ECF No. 734 ("**VarigLog Opp.**") at ¶¶ 10–13, 22]. This contention is also the central basis for the VarigLog Estate's cross-motion for summary judgment. [*Id.* at ¶¶ 116–18]. The VarigLog Estate also contends that, as a matter of Brazilian law, it is not a "successor" to VarigLog, nor does it seek compensation on a claim to which its entitlement arises "by or through" VarigLog, because its entitlements exist as a matter of Brazilian law for the benefit of the creditor body or full estate of the VarigLog insolvency proceeding, not merely the VarigLog enterprise itself. [*Id.* at ¶¶ 34–44].

Finally, the VarigLog Estate contends that, even if MatlinPatterson preserved its DAA-based defenses and the VarigLog Estate's claims arise "by or through" VarigLog, the DAA is presumptively invalid because it was the product of "overmastering influence." [*Id.* at ¶¶ 91–96]. In support of its contention, the VarigLog Estate presents evidence of the DAA negotiation process spanning November 2008 through January 2009. [*See* ECF Nos. 734-1 ("**Counterstatement of Material Facts**"), 734-2 ("**Grossman Decl. II**")]. In particular, the VarigLog Estate asserts that its evidence illustrates that by November 2008, MatlinPatterson had appointed all of the directors and managers of VarigLog, including its CEO and board chair Chan Lup Wai Ohira, the sister of Matlin Patterson General Partner Lap Chan; that MatlinPatterson attorneys created the first draft of the DAA; that MatlinPatterson added the release and indemnification language after VarigLog's board approved the debt assumption transaction (subject to finalization of agreement documents) based on an earlier draft of the DAA; that MatlinPatterson debtors concede that VarigLog's outside counsel for the DAA negotiations was simultaneously retained by MatlinPatterson for the same

transaction; that during negotiations VarigLog's inside and outside counsel proposed striking the release and indemnification sections of the DAA, but MatlinPatterson's officers and attorneys ignored the suggestion; that MatlinPatterson officers and attorneys waged a "pressure campaign" to persuade VarigLog to sign the agreement before expiration of a regulatory deadline at the end of January 2009; and that "a single individual," Ms. Ohira, executed the DAA on behalf of VarigLog.  [VarigLog Opp. at § VII; *see* Counterstatement of Material Facts; Grossman Decl. II].

In rebuttal, MatlinPatterson argues that the VarigLog Estate misstates the law of undue influence.  [ECF No. 736 at ¶¶ 51–54].  MatlinPatterson also contends that the DAA negotiation was proper and that the VarigLog Estate's evidence illustrates that there was "arms-length, back-and-forth negotiation."  [*Id*. at ¶ 54].  MatlinPatterson also points out that "apparent on the face" of the DAA is that VarigLog had two signatories, not "a single individual."  [*Id*. at ¶ 53].

## DISCUSSION

### A.  Standard of Review

Under Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, a party may move for summary judgment on any claim or any portion of a claim. Fed. R. Civ. P. 56(a).  To prevail on a motion for summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id*.  If the Court "does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case."  Fed. R. Civ. P. 56(g); *see In re Residential Cap., LLC*, 533 B.R. 379, 395 (Bankr. S.D.N.Y. 2015) (citing Fed. R. Civ. P. 56(g)).

Most case law explaining the summary judgment standard of review focuses on the requirement of a lack of any genuine dispute of material fact, but, in addition to this requirement,

before granting a summary judgment motion the Court must satisfy itself that the movant is "entitled to judgment as a matter of law," even in the case of an unopposed motion where no genuine factual dispute is raised. *See Vermont Teddy Bear Co., Inc. v. 1-800-Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (even where a motion is unopposed, "the district court must still assess whether the moving party has fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law"); *see also Diaz v. Smith*, 2022 WL 3593379, * 4 (N.D.N.Y. Aug. 23, 2022) ("even if there is no dispute as to any material fact[,] the court must then determine whether the moving party is entitled to judgment as a matter of law: 'The nonexistence of a factual dispute is a mere predicate to summary judgment, and is never, by itself, dispositive of the motion. For example, if the facts are undisputed but there is more than one legally permissible conclusion that could be drawn from those facts, a trial will be required . . . .'") (quoting 11 Moore's Fed. Prac. Civ. § 56.02 (2022)).

Meanwhile, as to the usually central question of whether a genuine issue of material fact exists, a fact is material "if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of New York*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). To defeat a motion for summary judgment, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248.

In the contract dispute context, "[w]here there are no disputes of material fact, '[t]he proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment.'" *In re NIU Holdings LLC*, 624 B.R. 22, 35 (Bankr. S.D.N.Y. 2020) (quoting *Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002)).  The DAA, by its own terms, is to be construed applying New York law.  [DAA ¶ 9].

This case also involves competing contentions regarding relevant aspects of Brazilian law. Pursuant to Federal Rule of Civil Procedure 44.1, made applicable in bankruptcy courts by Bankruptcy Rule 9017, a court's determination of foreign law "must be treated as a ruling on a question of law."  Case law confirms that, under Rule 44.1, "[d]etermination of a foreign country's law is an issue of law."  *Itar–Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 92 (2d Cir. 1998); *see also Kim v. Co-op. Centrale Raiffeisen–Boerenleebank B.A.*, 364 F. Supp. 2d 346, 349 (S.D.N.Y. 2005).  Accordingly, disputed issues of foreign law may properly be resolved at the summary judgment stage.  Disputes among experts regarding foreign law do not create issues of fact.  *Korea Life Ins. Co. v. Morgan Guar. Tr. Co. of New York*, 269 F. Supp. 2d 424, 439 (S.D.N.Y. 2003).

**B. Neither MatlinPatterson Nor the VarigLog Estate Has Shown Entitlement to Summary Judgment but Partial Summary Judgment Is Appropriate as to Certain Issues Pursuant to Rule 56(g)**

The Court assesses the following key contentions: (1) was the DAA valid in the first place; (2) does the DAA apply to the VarigLog Estate; (3) did MatlinPatterson waive any DAA-based defense in the VarigLog Estate's Brazil lawsuit against MatlinPatterson; and (4) what is the effect of any such waiver on the VarigLog Estate's claim entitlements here.

First, MatlinPatterson's motion relies all but entirely on the asserted applicability of DAA-based defenses to bar the VarigLog Estate's claim against the MatlinPatterson debtors.  [Hearing

Tr. 43:12 ("The release is the main event")]. A necessary predicate of that contention is that the DAA is valid and enforceable in the first place. VarigLog presents evidence and argument calling that assumption into question, but its contentions are not sufficient to preclude a grant of summary judgment disallowing the VarigLog Estate's contention that the DAA is invalid due to MatlinPatterson's asserted "overmastering influence" over the former VarigLog.

To authenticate and establish the existence and contents of the DAA, MatlinPatterson presented a copy of the agreement itself. [*See* Graff Decl., Ex. A].

The VarigLog Estate does not contest that the DAA document relied on by MatlinPatterson is authentic and accurately sets forth the agreement of the parties to the DAA. [*See* Counterstatement of Material Facts at 3 ("Not disputed that two [DAAs] were executed by VarigLog, among others."), 4 ("The [DAAs] contain releases by VarigLog at paragraph 4(a) and 4(b). The best evidence of the terms of the [DAAs] are the agreements themselves.")].

Rather, the VarigLog Estate contends that the DAA was the product of such "overmastering influence" on the part of MatlinPatterson-associated entities and officials over the much weaker and dependent pre-Brazil-insolvency-proceeding VarigLog entity that the DAA is "presumptively invalid." [VarigLog Opp. at ¶¶ 91–96]. VarigLog has shown admissible evidence that MatlinPatterson held and exploited significant influence or even control over VarigLog and pressured VarigLog to sign the DAA including its release provisions, which were not in the draft document that existed at the time the VarigLog board voted to approve the agreement subject to finalization of documentation. [*See* Grossman Decl. II]. Further, VarigLog objects that DAA's removal of $250 million in debt from VarigLog's balance sheet was not economically meaningful given the likely subordination of that debt and VarigLog's deep financial distress, such that the

transaction in reality was a ploy by which MatlinPatterson extracted broad releases for little meaningful consideration. [VarigLog Opp. at ¶¶ 61–64].

MatlinPatterson opposes the VarigLog Estate's contentions by arguing that VarigLog Estate's own evidence indicates that proper corporate formalities were observed, including that VarigLog was represented by counsel during the negotiation and execution of the DAA, and that the DAA document itself is executed by individuals who represented that they had authority to bind each corporation, including two separate VarigLog signatories. [*See* ECF No. 736 at ¶¶ 53–54; DAA; Grossman Decl. II].

The Court concludes that even crediting VarigLog Estate's factual contentions concerning the adoption of the DAA, the VarigLog Estate has failed to identify sufficient facts to create a genuine dispute of material fact requiring trial on the validity of the DAAs. VarigLog relies on sparse, old, and materially distinguishable case law, none of it from the corporate context. The only cases VarigLog cites are *Cowee v. Cornell,* 75 N.Y. 91, 99–100 (1878) (when "the relations between the contracting parties appear to be of such a character as to render it certain that they do not deal on terms of equality but that either on the one side from superior knowledge of the matter derived from a fiduciary relation, or from overmastering influence, or on the other from weakness, dependence, or trust justifiably reposed, unfair advantage in a transaction is rendered probable, there the burden is shifted, the transaction is presumed void, and it is incumbent upon the stronger party to show affirmatively that no deception was practiced, no undue influence was used, and that all was fair, open, voluntary and well understood."), *Gordon v. Bialystoker Center, Inc.*, 45 N.Y.2d 692, 698–99 (1978) (same), *Mar Oil v. Morrisey*, 982 F.2d 830, 838 (2d Cir. 1993) (when parties have a fiduciary relationship, "transactions between them are scrutinized with extreme vigilance, and clear evidence is required that the transaction was understood, and that there was no fraud,

mistake or undue influence") (quoting *Gordon*, 45 N.Y. 2d at 698), and *839 Cliffside Ave. LLC v. Deutsche Bank Nat'l Trust*, No. 15-CV-4516, 2018 WL 4608198, at \*9 (S.D.N.Y. 2018) (same). This authority does not support the relief that the VarigLog Estate seeks. "Under New York law, a party claiming that it was unduly influenced to enter a contractual relationship must prove that it contracted under circumstances indicating that a relationship of control existed and that the stronger of the two parties had exerted influence over the other to destroy the weaker party's free will and substitute for it the will of the other." *Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 393–94 (S.D.N.Y. 2001) (quotation omitted) (challenging party cannot, as a matter of law, demonstrate undue influence where alleged conduct "at most consisted of urging or pressuring . . . to sign"). "The burden is heavy: a party seeking to invalidate a contract must demonstrate that it was manipulated into signing a contract as a consequence of conduct worse than 'even pressure, no matter how bad.'" *Id*. (quoting *Kazaras v. Manufacturers Trust Co.*, 164 N.Y.S.2d 211, 221 (1st Dep't 1957)).

The VarigLog Estate argues that "documents produced by Debtors concerning the negotiation and execution of the DAAs conclusively demonstrate that MatlinPatterson not only influenced, but entirely controlled, every stage of the transactions" in such a way that "VarigLog had no actual choice or say." [VarigLog Opp. at ¶ 94]. But the evidence submitted does not bear out this contention. Rather, even viewing the facts in the light most favorable to the VarigLog Estate, nothing in the record suggests that VarigLog's DAA signatories lacked ordinary intelligence or fortitude such that MatlinPatterson's alleged conduct could have "destroy[ed]" VarigLog's "free will." *Sun Forest*, 152 F. Supp. 2d. at 393. To the contrary, counsel for VarigLog were very much aware of the contents of the DAAs, proposed changes (albeit with limited if any success) during the drafting process, and expressed knowledgeable concern about the release

13

provision the VarigLog Estate now seeks to invalidate. [*See* Grossman Decl. II, Ex. 24 (email from VarigLog general counsel to Matlin Patterson officers and counsel suggesting that the release provision be annexed to a separate agreement and attaching a blackline version of the DAA striking the release provision in its entirety)].

The VarigLog Estate cannot save its undue influence theory by arguing that MatlinPatterson's involvement as corporate parent gave it "sufficient control over VarigLog concerning the DAAs to trigger an inquiry regarding undue influence" [VarigLog Opp. at ¶ 95]. *See Cowee*, 75 N.Y. at 101 (presumption of undue influence arises "in the case of guardian and ward, trustee and *cestui que trust*, attorney and client, and perhaps physician and patient" yet, "while the doctrine is without doubt to be extended to many other relations of trust, confidence or inequality, the trust and confidence, or the superiority on one side and weakness on the other must be proved in each of these cases; the law does not presume them from the fact for instance that one party is a grandfather and old and the other a grandson and young, or that one is an employer and the other an *employé*"). Even crediting the VarigLog Estate's contention that MatlinPatterson exploited its role as corporate parent by placing its own people in key positions in VarigLog's leadership and simultaneously retaining VarigLog's purportedly "independent" counsel for the same transaction, as stated above, the VarigLog Estate has presented no facts that give rise to a presumption or triable fact dispute as to whether MatlinPatterson broke the free will of VarigLog's DAA-signatories, officers, or agents involved in the DAA negotiation. Given the frequency and importance of contracts between corporate parents and subsidiaries over which the parent wields substantial control, it would be harmful and unwarranted to extend the limited and distinguishable law on which the VarigLog Estate relies into the corporate context. *See, e.g.*, *Chemours Co. v. DowDuPont Inc.*, No. CV 2019-0351-SG, 2020 WL 1527783, at *10 (Del. Ch. Mar. 30, 2020),

*aff'd*, 243 A.3d 441 (Del. 2020) ("Simply because the parent dictates terms to its wholly-owned subsidiary is not a grounds under Delaware law to infer lack of consent such that the contract would not be enforceable.").

The Court therefore grants MatlinPatterson partial summary judgment under Fed. R. Civ. P. 56(g) as to whether the DAA was validly adopted, and whether it is unenforceable by reason of its negotiating history or the respective bargaining power of MatlinPatterson and VarigLog at the time of the DAA's adoption.

The Court pauses to note that, although VarigLog's opposition requested leave to conduct further discovery pursuant to Fed. R. Civ. P. 56(d) [VarigLog Opp. at ¶¶ 87–90], ample time for discovery has been allowed in this dispute, discovery was ongoing up to the date of argument on the summary judgment motion, and many of the communications at issue involved officials of VarigLog, which, notwithstanding various recordkeeping difficulties, may well have been available to the VarigLog Estate. Further discovery has been available as the parties rapidly approach MatlinPatterson's intended plan confirmation date and the date of a contemplated estimation proceeding regarding the appropriate amount, if any, of the VarigLog Estate's claim. That ongoing discovery has already afforded, and if not complete continues to afford, the VarigLog Estate the ability to locate additional information to support its contentions. The Court will deem its Rule 56(g) ruling with respect to the adoption and validity of the DAA to be without prejudice to reopening in the event VarigLog obtains additional information that strengthens its contention that the DAA is invalid or unenforceable and that was not produced until after the February 1 hearing on the summary judgment motion.

The Court next turns to MatlinPatterson's argument that the DAA's release provisions, by their terms, apply to the VarigLog Estate and, if not waived, would bar the VarigLog Estate's

claims. The Court concludes that MatlinPatterson's contention about the meaning and application of the release provision is correct, and, accordingly, grants partial summary judgment under Rule 56(g) as to this issue.

First, there is no dispute that the DAA's term "Releasees" extends to the MatlinPatterson debtor entities. That term is defined as:

> "each of (i) Volo LLC and its predecessors, successors and assigns, (ii) Volo LLC's affiliates (other than VarigLog and VoloBr), and their predecessors, successors and assigns, and (iii) any current and former managers, members, shareholders, partners (limited or general), directors, officers, employees, agents and advisers, including all such persons' heirs and assigns, of Volo LLC, its affiliates (other than VarigLog and VoloBr) and each of their respective predecessors, successors and assigns.

[DAA ¶ 4(a)]. DAA releasee Volo LLC is a debtor in the jointly administered case before this Court and the VarigLog Estate has not disputed MatlinPatterson's showing that the remaining debtor entities are its affiliates.

Second, there is also (virtually) no dispute that the conduct that forms the basis for the VarigLog Estate's claim falls within the scope of types of events that are covered by the DAA release language. The DAA releases released parties from "all claims, actions, suits, causes of action[,] demands, debts, and liabilities . . . based in whole or in part on any act . . . [in] any way relating to Releasor and its affiliates . . . ." [DAA ¶ 4(b)]. And the claim of the VarigLog Estate is for pre-bankruptcy conduct by MatlinPatterson entities that allegedly caused commercial harm to VarigLog, thus forcing it to suffer irreversible business declines and to enter insolvency proceedings in which it is unable to fully pay its creditors. [*See* Claims Register, Claim 4-1 (attaching Brazil action complaint)]. The only possible exception to the release's topical reach is that the VarigLog Estate asserts, without elaboration, that its claim is based in part on conduct that post-dated the execution of the DAA and is outside the release's temporal scope. [VarigLog Opp. at ¶ 44 (citing Brazil action complaint); ECF No. 756 at ¶ 22]. MatlinPatterson has noted that

16

"[a]ll but one of the alleged acts/events that are the subject of the Brazilian Action occurred during the period between January 27, 2006, and the end of August 2008." [ECF No. 392 at ¶ 24]. The VarigLog Estate has not shown or elaborated on what later-arising conduct might be established, or whether it alone is sufficient to support a claim without reference to MatlinPatterson's pre-DAA conduct. The Court therefore grants partial summary judgment under Rule 56(g) as to whether the DAA's release provision applies by its terms to the MatlinPatterson conduct that forms the basis of the VarigLog Estate's claims, subject to a possible request to reopen the motion based on any later-discovered evidence of post-DAA conduct that is sufficient to support some or all of the VarigLog Estate's claim—with any such reopening request subject to objection by MatlinPatterson on waiver or any other relevant grounds.

Third and on a question that the VarigLog Estate energetically challenges, the VarigLog Estate falls within the plain meaning of the DAA's provision defining "Releasors," *i.e.*, the parties that release MatlinPatterson entities under the terms of the DAA. Again, that provision bars all future claims of "VarigLog," or its successors, or its "current and former affiliates and subsidiaries, and each of their respective current and former directors, officers and employees, agents and anyone claiming by or through any of the foregoing." [DAA ¶ 4(a)]. The Court notes that the punctuation of this provision, which includes haphazardly placed semicolons, could support a reading that the "any of the foregoing" to be claimed "by or through" does not extend back to VarigLog, but, construing the document as a whole in light of its evident purpose and intent, and given that the VarigLog Estate's opposition to the motion did not challenge MatlinPatterson's construction of the DAA release provision, the Court concludes that its meaning is established, again applying Rule 56(g). In fact, the VarigLog Estate seemingly endorsed MatlinPatterson's persuasive reading of the "by or through" language as referring to VarigLog in the course of the

VarigLog Estate's arguments attempting to differentiate the VarigLog Estate from VarigLog. [VarigLog Opp. at ¶ 36 ("[T]he Brazilian Action was not brought by VarigLog but by the VarigLog Estate in its 'subjective' capacity. The VarigLog Estate's claims are not being asserted 'by or through' VarigLog as the claims are not prepetition claims of VarigLog")]. These arguments do not dispute and seem to implicitly acknowledge that claims "by or through" VarigLog have been released.

The Court can conceive of no understanding of what the VarigLog Estate is pursuing here and in its Brazil lawsuit against MatlinPatterson that does not constitute an assertion of entitlements that the estate assertedly obtained or holds "by or through" the pre-Brazil-bankruptcy VarigLog. The VarigLog Estate's claim is based entirely on its assertion of legally compensable commercial harms allegedly flowing from acts done to VarigLog by MatlinPatterson. This reality is not overcome by the VarigLog Estate's extensive discussion of the characteristics and legal entitlements it has as a creature of Brazilian insolvency law, most pertinently that at least its Article 50 claim is a remedy held and asserted by the estate for the benefit of the VarigLog Estate's creditors. Even crediting that explanation, the basis of the claim asserted and the asserted injury are inextricably intertwined with and based upon MatlinPatterson's conduct in connection with VarigLog. Because the DAA includes a New York choice-of-law provision, the Court applies New York law in construing the contractual term "by or through," while looking to Brazil law and the claims asserted in Brazil to assess whether they constitute claims that the VarigLog Estate holds or exercises "by or through" VarigLog. Again, because all alleged misconduct and damages flow from conduct that MatlinPatterson allegedly directed at VarigLog that allegedly resulted in commercial harm, the claim advanced necessarily arises "by or through" VarigLog. *See By, Black's Law Dictionary* (6th ed. 1990) ("in consequence of" or "Through the means, act, agency

or instrumentality of."); *id*. at *Through* ("By means of, in consequence of, by reason of"); *see also In re Lehman Bros. Holdings Inc.*, 553 B.R. 476, 498–99 (Bankr. S.D.N.Y. 2016), *aff'd*, No. 17 CIV. 1224 (LGS), 2018 WL 1322225 (S.D.N.Y. Mar. 14, 2018), *aff'd*, 970 F.3d 91 (2d Cir. 2020) ("Under New York law, when interpreting a contract, a court's 'primary objective is to give effect to the intent of the parties as revealed by the language of their agreement.  The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.'") (quoting *Chesapeake Energy Corp. v. The Bank of New York Mellon Trust Co., N.A.*, 773 F.3d 110, 113–14 (2d Cir. 2015)); *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 120 (2d Cir. 2010) ("It is common practice for courts of this state to refer to the dictionary to determine the plain and ordinary meaning of words to a contract.") (citation omitted).

This conclusion makes immaterial a second interpretive dispute among the parties as to whether the VarigLog Estate also is a "successor" of pre-bankruptcy VarigLog, and subject to the DAA release provision on that basis as well.  The Court therefore does not reach that question, which may turn on a complex interaction of Brazilian insolvency law and New York law-controlled definitions of DAA provisions, particularly with respect to the VarigLog Estate's Article 50 claims in Brazil on behalf of the company's creditor body.

Thus, in sum, the Court concludes under Rule 56(g) that, if there were no remaining clouds on its enforceability, the DAA release provisions would preclude the VarigLog Estate's claim against MatlinPatterson.

There remains, however, one more issue that the Court ultimately concludes is not susceptible to resolution on summary judgment based on the arguments submitted to date, for or against either party.  That is the question of to what extent if at all MatlinPatterson's decision not

to assert DAA-based defenses in the VarigLog Estate's lawsuit against MatlinPatterson in Brazil waives MatlinPatterson's ability to rely on DAA defenses in challenging the VarigLog Estate's claim in this Court.

The VarigLog Estate emphasizes that MatlinPatterson failed to assert its DAA release defense (or other DAA based defenses) in the proceedings pending in Brazil. MatlinPatterson does not dispute that it did not raise the defense in Brazil (other than by mentioning briefly in a submission to the Brazilian Court [Graff Decl., Ex. B at ¶ 71] that it avoided doing so in order to preserve its ability to litigate the defense in courts of the United States). MatlinPatterson further does not dispute that its failure to raise the defense in its initial response to the action in Brazil precludes it from raising that defense within the Brazilian Action. [ECF No. 507 (Debtors' Statement of Undisputed Material Facts) at ¶ 22; ECF No. 736, Ex. A (Cerezetti Expert Declaration) at ¶ 14 ("As a matter of Brazilian law, the Debtors are no longer allowed to rely on the DAAs only *in the Brazilian Action* due to the mechanism of *preclusão* ('preclusion'), which terminates the possibility of exercising a procedural faculty in a given lawsuit when the time limit set for it has passed.") (emphasis in original)].

The parties dispute whether MatlinPatterson's waiver of a DAA release defense in the Brazil litigation extends to preclude MatlinPatterson from relying on the DAA's release language as a defense to the claim of the VarigLog Estate in the MatlinPatterson bankruptcy proceedings in this Court. VarigLog insists that its claim before this Court is nothing more than a continuation of the litigation in Brazil, which it is being forced to conduct in this Court against its will due to MatlinPatterson's commencement of bankruptcy proceedings here. MatlinPatterson disagrees, pointing to considerations including the DAA's no-waiver provision and its New York forum and choice-of-law provisions and contending, wrongly in the Court's view given the permissive but

not mandatory contractual language, *see infra* at 23, that DAA issues could not be litigated in Brazil and therefore can only be considered here. Ultimately, the Court concludes that neither party's contentions establish entitlement to judgment as a matter of law on this critical question. For this reason, the parties' competing motions for summary judgment are both denied.

The VarigLog Estate argues that its claim in this Court represents nothing more than the continuation of its Brazil lawsuit, and that, under what it asserts is controlling Second Circuit precedent, any waiver of a defense in the Brazil litigation therefore is equally preclusive in the claim objection dispute now pending before this Court. [ECF No. 756 at ¶ 2 ("Debtors ignore controlling Second Circuit precedent, holding that 'the practical effect of filing a proof of claim in the bankruptcy court' is to transfer the non-bankruptcy litigation from its pre-bankruptcy forum to the bankruptcy court") (quoting *In re Coudert Bros. LLP*, 673 F.3d 180, 182 (2d Cir. 2012)); *see id.* at ¶ 13 ("VarigLog Estate's bankruptcy claim is the Brazilian Action, it is not a new Action.")].

MatlinPatterson responds that the VarigLog Estate reads *Coudert* too broadly, and that the DAA's forum selection clause, its anti-waiver provision, and its selection of New York law all mean that the unavailability of the defense in the Brazil proceeding has no effect on MatlinPatterson's ability to rely on the release defense here. MatlinPatterson further insists that the VarigLog estate has ratified the DAAs including its releases and/or is estopped from denying the releases' applicability because VarigLog for more than 13 years has accepted the benefit of the DAA's debt relief, which the VarigLog Estate never has questioned or sought to reverse by assuming responsibility for the transferred debt obligations. The VarigLog Estate in turn replies that all of these are defenses that could and should have been raised in Brazil, and that are now waived by virtue of MatlinPatterson's failure to raise them in Brazil.

The Court agrees with MatlinPatterson that the VarigLog Estate's assertion of sweeping defense-preclusive implications based on *Coudert* is not supportable, but the Court finds neither party's arguments entirely persuasive. First, *Coudert* was a narrow ruling that a debtor could not defeat the applicability of Connecticut law, specifically a more permissive statute of limitations, by commencing bankruptcy proceedings in New York while a lawsuit was pending in Connecticut federal court and then insisting that a shorter New York statute of limitations rendered the timely-when-filed case untimely by operation of the automatic stay and the bankruptcy code's funneling of all disputes involving the debtor into the bankruptcy court arena. *Coudert*, 673 F.3d 180. *Coudert* turned on specific and important considerations of courts' recognition and protection of a plaintiff's ordinary discretion to select a forum and a resulting policy-driven desire not to cause a plaintiff who timely filed suit in Connecticut to have its claim precluded merely because the defendant filed for bankruptcy protection in New York such that the plaintiff unexpectedly had to pursue relief in a New York bankruptcy court. *Id.* at 189 ("If a defendant could forum-shop using § 1404(a) to transfer venue and obtain different choice of law rules, the defendant would 'achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed,' the main evil *Klaxon* sought to avoid.") (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964); and citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)); *id.* ("a plaintiff's right to shop for favorable choice of law rules is so important that it should not be compromised 'by being put to a choice between a choice of law versus forum'") (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 529 (1990)). The VarigLog Estate proposes to extend *Coudert* farther than it has ever been applied, and farther than its logic warrants, to create a rule that there can be no law considered and no defense available to a claim in a bankruptcy proceeding that would not have been available in an underlying lawsuit pending anywhere else in the world. Such

an aggressive reading of *Coudert* is not supported either by the *Coudert* decision itself, or by any other authority known to this Court.

On the other hand, MatlinPatterson's response overstates the case for disregarding the effect of their waiver of DAA defenses in the Brazil litigation. The DAA does *not* include a mandatory venue provision, but rather a permissive one—that actions to "interpret or enforce" the DAA "may" be brought in the courts of New York, not "must." [DAA ¶ 8]. The Court sees nothing in the DAA that precludes an aggrieved party such as the VarigLog Estate from bringing an affirmative case that does not arise under or seek to enforce the DAA in another forum just because such a case might be subject to DAA-based *defenses*. This reality undermines one of MatlinPatterson's core points and distinguishes much of its case law. *E.g.*, *Hemlock Semiconductor Corp. v. Kyocera Corp.*, No. 15-CV-11236, 2016 WL 67596, at *17 (E.D. Mich. Jan. 6, 2016) (even a final judgment of foreign court would not be entitled to U.S. recognition if obtained in violation of forum selection clause). So, contrary to MatlinPatterson's contentions, the mere text of the DAA forum selection provision does not necessarily overcome the VarigLog Estate's waiver argument.

Be that as it may, not only does the VarigLog Estate over-read *Coudert*, it also has not shown law establishing its entitlement to judgment as a matter of law based on its assertion of the sweep and implications of MatlinPatterson's waiver of release defenses in the Brazil litigation. First, it is not clear whether all aspects of the DAA on which MatlinPatterson relies are appropriately deemed potential defenses that must have been raised in the Brazil proceeding to avoid forfeiture. Specifically, the DAA includes an indemnification provision that may not be ripe until and unless a judgment or an actual payment obligation exists—potentially via an allowed claim against the MatlinPatterson's bankruptcy estate here. Despite the VarigLog Estate's

protestations that it is a different entity from VarigLog and is not bound by the indemnification provision, the Court concludes that VarigLog has not shown any conclusive reason the indemnification obligation does not reach it.  Further, the briefing to date does not adequately address the possibility that a VarigLog Estate indemnification obligation has not yet been triggered (because MatlinPatterson has not yet incurred or satisfied a claim against it on which payment is due), so that it is possible that MatlinPatterson was not yet required to assert an indemnification claim or defense in the Brazil proceedings.  Nor has VarigLog shown that the express language of the indemnification provision is insufficiently clear to embrace liability resulting from MatlinPatterson's own conduct.  [*Compare* VarigLog Opp. at ¶¶ 49–50 (citing case law requiring that "first party" indemnity obligations be set forth in "unmistakably clear" language) *with* DAA ¶ 4(c) ("VarigLog agrees to indemnify and hold harmless Indemnitees from and against any and all claims, damages, losses, liabilities, debts or expenses incurred . . . as the result of any action or claim . . . *by any person . . . in any way relating to any Indemnitees' transactions or relationship with VarigLog*") (emphasis added)].

The possible remaining availability of indemnification defenses, as well as other DAA defenses, is reinforced by the terms of the DAA itself, especially its anti-waiver provision, by which VarigLog and MatlinPatterson specifically agreed, "Any delay of any Party in demanding the performance by the other Party(ies) of the obligations set forth in this Agreement will not affect its right to demand such performance at a later time."  [DAA ¶ 11(ii)].  MatlinPatterson could have made more robust efforts to raise and preserve its DAA-based defenses, but it did act to try to preserve its access to a U.S. forum to assert its DAA defenses, both in the VarigLog Estate's Miami Chapter 15 proceeding (by commencing an adversary proceeding seeking a declaration that the DAA precluded the VarigLog Estate's claims) and in Brazil (contending in a September 17, 2020

submission to the Brazil court that MatlinPatterson was seeking the Florida court's "declaration" to "define the scope and effects of the DEBT ASSUMPTION AGREEMENTS"). [*E.g.*, ECF No. 734-4 at 113 of 130]. The logical case for preservation of an arguably not-yet-ripe indemnification entitlement is strengthened by the express contractual no-waiver provision, especially where it is undisputed that MatlinPatterson's assets are in the United States and would need to be the subject of U.S.-based collection efforts before any enforceable payment obligation to VarigLog or its estate could exist. The same may be true for other DAA-based entitlements.

It also is unclear to the Court, despite extensive reading and re-reading of the parties' papers and independent research, whether the pursuit of an allowed claim in this Court is an occasion for the assertion of some or all DAA-based defenses even if those defenses have been waived for purposes of the Brazil lawsuit against MatlinPatterson. The Court raised the question at oral argument and did not receive a clear answer. [Hearing Tr. at 65:11–16 ("the ability of this court to grant your motion is easier if you say, 'It doesn't matter; even assuming we waive for purposes of the Brazil proceedings, it's still viable and existing as to this proceeding in the US and here's why.' So, what's the answer to that?")]. The VarigLog Estate has filed a claim in this Court in the MatlinPatterson bankruptcy. A claim is an assertion of "a right to payment" by the bankruptcy estate. 11 U.S.C. § 101(5)(A). The Second Circuit has held that, while a "state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, [] the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim" because the "filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution." *In re Manville Forest Prod. Corp.*, 896 F.2d 1384, 1389–90 (2d Cir. 1990) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). Presumably

if the VarigLog Estate prevailed in the Brazil litigation, it would need to take additional steps to secure payment from MatlinPatterson—whether through a claim allowance and plan process in this Court, or through U.S. domestication and enforcement of its hypothetical future judgment in the absence of a MatlinPatterson bankruptcy. Other than the VarigLog Estate's unwarranted contentions relying on *Coudert*, the parties have not adequately explained whether the pursuit of a claim, at least in the circumstances present here, might or might not allow MatlinPatterson to assert defenses to that payment-demanding process that it has waived in the underlying Brazilian lawsuit.

The Court cannot conclude, then, that MatlinPatterson's waiver of its right to rely on its DAA release defenses in Brazil means that it has no possible entitlement to rely on the releases or other DAA-based defenses in this Court, in response to the VarigLog Estate's proof of claim—which again, represents the VarigLog Estate's demand for payment by the estate. Given the lack of persuasive briefing or argument detailing how the DAA release language might apply here specifically as to the claim allowance and payment entitlement component of the VarigLog Estate's claim, the Court declines to affirmatively grant either party claim-dispositive summary judgment. Rather, the Court will await further evidentiary development and legal contentions to assess whether and how the release and other DAA defenses might apply to the VarigLog claim notwithstanding MatlinPatterson's defense waiver in the Brazil litigation.

Finally, all of these considerations supporting the possible availability of DAA-based release and other defenses to the VarigLog Estate's claim here—as opposed to in Brazil—cause the Court to conclude that one of the VarigLog Estate's legal experts overstates the global preclusiveness of MatlinPatterson's failure to raise release or DAA-based defenses in the Brazil proceedings. The expert, Mr. Lucon, opined that MatlinPatterson's waiver precludes assertion of DAA-based release defenses anywhere because "the jurisdiction of the [Brazilian] Bankruptcy

court is absolute, which means it cannot be changed by a contractual clause." [ECF No. 734-4 at 13 of 130]. This Court in no way derogates or fails to extend comity to the Brazilian court's authority over the dispute before that court. But before this Court is a different question, albeit a related one, of what impact the DAA's release provisions and other terms may have on the VarigLog Estate's pursuit here of claim allowance and payment by the MatlinPatterson estate.

In sum, the Court concludes that neither party has shown entitlement to overall judgment as a matter of law, and, as a result, the Court declines to grant claim-dispositive summary judgment in favor of either party, although the Court grants partial summary judgment pursuant to Rule 56(g) to the extent stated above.

## <u>CONCLUSION</u>

For the reasons stated above, the Court denies both the motion for summary judgment of MatlinPatterson, and the cross-motion for summary judgment of the VarigLog Estate. The Court grants partial summary judgment pursuant to Federal Rule of Civil Procedure 56(g) as to specific issues noted in this decision—namely, rejecting the VarigLog Estate's contention that the DAA is invalid due to MatlinPatterson's asserted "overmastering influence" and determining that the DAA release by its terms applies to the VarigLog Estate. In addition, as the parties acknowledge, MatlinPatterson has waived any ability to advance its DAA release defenses in the Brazil proceedings. The parties are to confer and jointly submit a proposed order to effectuate this ruling. A ruling on MatlinPatterson's pending motion regarding claim estimation proceedings will be separately forthcoming.

Dated: New York, New York
     March 15, 2023            <u>  *s/ David S. Jones*           </u>
                            Honorable David S. Jones
                            United States Bankruptcy Judge