Elisha D. Graff
Kathrine A. McLendon
Jamie J. Fell
Dov Gottlieb
**SIMPSON THACHER & BARTLETT LLP**
425 Lexington Avenue
New York, NY 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

Tyler B. Robinson
Lauren W. Brazier (admitted *pro hac vice*)
**SIMPSON THACHER & BARTLETT LLP**
CityPoint
One Ropemaker Street
London EC2Y 9HU, England
Tel: +44-(0)20-7275-6500
Fax: +44-(0)20-7275-6592

*Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MatlinPatterson Global Opportunities Partners II L.P., *et al.*, | ) | Case No. 21-11255 (DSJ) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 105 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING THE**
**SETTLEMENT AMONG DEBTORS, THE VARIGLOG ESTATE, AND THE**
**PARTICIPATING INSURERS**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: MatlinPatterson Global Opportunities Partners II L.P. (8284); MatlinPatterson Global Partners (Cayman) II L.P. (8246); MatlinPatterson Global Partners II LLC (6962); MatlinPatterson Global Advisers LLC (2931); MatlinPatterson PE Holdings LLC (6900); Volo Logistics LLC (8287); MatlinPatterson Global Opportunities Partners (SUB) II L.P. (9209). The location of the Debtors' address is: 300 East 95th Street, Suite 102, New York, New York 10128.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Adelphia Bus. Sols., Inc. v. Abnos*
  482 F.3d 602 (2d Cir. 2007)................................................................................. 7

*Dietz v. Bouldin*,
  579 U.S. 40 (2016)............................................................................................. 11

*In re Adelphia Commc'ns Corp.*
  327 B.R. 143 (Bankr. S.D.N.Y. 2005)................................................. 6, 7, 8, 9, 10

*In re Lehman Bros. Holdings, Inc.*
  435 B.R. 122 (S.D.N.Y. 2010)............................................................................. 6

*In re Motors Liquidation Co.*
  555 B.R. 355 (Bankr. S.D.N.Y. 2016)................................................................ 10

*In re Penn Cent. Transp. Co.*
  596 F.2d 1102 (3d Cir. 1979).............................................................................. 6

*In re Purofied Down Prods. Corp.*
  150 B.R. 519 (S.D.N.Y. 1993)........................................................................ 6, 10

*In re W.T. Grant Co.*
  699 F.2d 599 (2d Cir. 1983)................................................................................ 6

*Miller v. Annucci*,
  9:19-CV-0030 (LEK/ATB), 2019 WL 11276702 (N.D.N.Y. Nov. 13, 2019) ...................... 12

*Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*
  478 F.3d 452 (2d Cir. 2007)............................................................................ 6, 7

*Nuss v. Guardian Life Insurance Company of America*,
  1:20-cv-9189-MKV, 2021 WL 1791593 (S.D.N.Y. May 5, 2021) ......................... 12

*Pinsker v. Borders, Inc.* (*In re BGI, Inc.*)
  465 B.R. 365 (Bankr. S.D.N.Y. 2012).................................................................. 10

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*
  390 U.S. 414 (1968)............................................................................................ 6

**Statutes and Other Authorities**

11 U.S.C. § 105(a) .................................................................................................. 7

28 U.S.C. § 1334.................................................................................................... 3

28 U.S.C. § 157...................................................................................................... 3

28 U.S.C. § 157(b)(2) ................................................................................................................... 3

Fed. R. Bankr. P. 9019(a) ............................................................................................................ 5

The above-captioned debtors and debtors in possession (collectively, the "***Debtors***"), submit this motion (the "***Motion***") pursuant to Section 105 of title 11 of the United States Code (the "***Bankruptcy Code***") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the "***Order***"), approving the settlement among Debtors, the bankruptcy estate of Varig Logistica S.A. (the "***VarigLog Estate***"), and each of the Debtors' insurance carriers that is party thereto (the "***Participating Insurers***") that is memorialized in the substantially final form of settlement term sheet attached hereto as **Exhibit B** (the "***Settlement***").  In support of this Motion, the Debtors respectfully state as follows:

### Preliminary Statement

1.      The Settlement with the VarigLog Estate is the final piece necessary to conclude these Chapter 11 Cases successfully and effectuate final distributions to investors and other stakeholders.  It has long been a condition to confirmation of the Debtors' Amended Plan [Docket No. 625] that the approximately $387 million claim asserted by the VarigLog Estate must be resolved either through settlement or estimation within the parameters of the Amended Plan.  Since the VarigLog Estate first filed proceedings in Brazil against Debtors in May 2020, the parties have been in engaged in acutely contested litigation across multiple fora, including before this Court. This Court has repeatedly urged the parties to find a path to consensual resolution.  Now, with the guidance and assistance of mediators Ms. Michelle Yoshida and former Bankruptcy Judge James Peck, the Debtors, the VarigLog Estate and the Participating Insurers have reached a settlement that finally resolves this dispute and paves the way for the Debtors to confirm and implement their Amended Plan promptly, and on a fully consensual basis.

1

2.    The Settlement contemplates that the VarigLog Estate will be granted an allowed claim of $13.5 million, to be funded entirely by the Participating Insurers.  The Settlement overwhelmingly satisfies the applicable standards for approval under Bankruptcy Rule 9019 and should be approved.  The Settlement provides finality and certainty to all parties, and avoids the inherent risk in an estimation process involving cross-border, complex litigation.

3.    Against the backdrop of that risk, the VarigLog Settlement Amount (as defined below) is less than 5% of the asserted amount of the VarigLog Claim (as defined below) and was achieved with Judge Peck's recommendation.  This is plainly the best and most efficient means of achieving full and final resolution of the Debtors' dispute with the VarigLog Estate and carving a pathway to confirmation.  Accordingly, for the reasons set forth herein, the Settlement is fair and equitable and in the best interests of the Debtors' estates, and the Debtors respectfully request that the Court approve the Settlement.

## Background

4.    On July 6, 2021 (the "***Petition Date***"), each of the Debtors commenced a voluntary case (collectively, the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code.

5.    On August 5, 2021, the Bankruptcy Court entered the *Order (I) Establishing a Deadline for the Filing Proofs of Claim Asserting the Litigation Claims Against the Debtors and (II) Approving the Form and Manner of Notice Thereof* [Docket No. 104] (the "***Limited Bar Date Order***"). Paragraph 1 of the Limited Bar Date Order required VRG, the VarigLog Estate, and HJDK to file proofs of claim on or before September 24, 2021.  On September 24, 2021, the VarigLog Estate filed proofs of claim asserting claims (collectively, the "***VarigLog Claim***") against the Debtors in the amount of approximately $387 million, representing the entirety of the outstanding obligations to the creditors of VarigLog, a Brazilian cargo airline which was an indirect subsidiary of certain Debtors from 2006 to 2009.  The VarigLog Claim is premised upon

allegations of wrongdoing by the Debtors in connection with VarigLog's ultimate entry into Brazilian bankruptcy proceedings in 2012, asserting veil-piercing and fiduciary breach theories under Brazilian law.

6.    The Debtors filed a claim objection to the VarigLog Claim on April 15, 2022 [Docket No. 392], and then on July 29, 2022, the Debtors filed the *Debtors' Motion for Summary Judgment on the Claims Filed by the Bankruptcy Estate of Varig Logistica S.A* [Docket No. 507] (the "**Summary Judgment Motion**").   Following the Court's denial of the VarigLog Estate's motion for abstention or full stay relief [Docket No. 710], the parties spent three months conducting discovery and submitting briefing on the Summary Judgment Motion, including the filing of a cross-motion for summary judgment by the VarigLog Estate [Docket No. 734].   A hearing was held on February 1, 2023, and on March 22, 2023, the Court entered the *Order (I) Denying (A) Debtors' Motion for Summary Judgment and (B) VarigLog's Cross-Motion for Summary Judgment and (II) Granting Partial Summary Judgment on Certain Issues* [Docket No. 834] (the "**Summary Judgment Decision**").   The Summary Judgment Decision granted partial summary judgment on several issues in favor of the Debtors, but the Court left certain matters to be addressed in the estimation process.   Accordingly, on March 22, 2023, the Court entered the *Order Granting Debtors' Motion for an Order Pursuant to 11 U.S.C. §§105(a) and 502(c) Establishing Procedures and a Schedule for Estimation for Purposes of Allowance and Distribution in These Chapter 11 Cases of the VarigLog Claim* [Docket No. 835] scheduling a 4.5-day estimation hearing and confirming the discovery, briefing and trial deadlines set forth in the *Pre-Estimation Trial Scheduling Order* [Docket No. 778].[1]

---

[1]    The estimation-related deadlines were later extended pursuant to the *Memorandum Endorsed Order* [Docket No. 846] entered on March 30, 2023.

7.      While engaged in these hotly contested motions, the Debtors and the VarigLog Estate renewed their mediation efforts.  On October 27, 2022, the Bankruptcy Court entered the *Order (I) Granting the Mediation Parties Leave to Participate in Mediation, (II) Appointing James M. Peck as Mediator and (III) Establishing Certain Terms and Conditions of the Mediation* [Docket No. 667].  The Debtors spent months in meaningful, arms'-length mediation with the VarigLog Estate and the Participating Insurers, overseen by Judge Peck and Michelle Yoshida, Esq. of Phillips ADR.  As a result, the Debtors and the VarigLog Estate reached the Settlement, which will bring certainty and finality to these Chapter 11 Cases for the Debtors and their investors and stakeholders.  In light of that landmark, the Court approved an adjournment of the planned estimation hearing and related litigation deadlines [Docket No. 851].  The Debtors now seek approval of the Settlement that, if granted, will allow them to proceed to confirmation of their plan on a fully consensual basis.

## Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Southern District of New York (this "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of New York*, dated January 31, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

9.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     The statutory and legal bases for the relief requested herein are Section 105 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

4

## **Relief Requested**

11.     The Debtors request the entry of an Order approving the Settlement, which shall be conditioned upon the Brazilian bankruptcy court's authorization for the VarigLog Estate to enter into and perform under the Settlement.  The key terms are summarized as follows:[2]

- The Settlement (including the contemplated process for ultimately paying the VarigLog Settlement Amount pursuant to an Amended Plan) is contingent in its entirety upon its approval by this Court pursuant to Bankruptcy Rule 9019, as well as approval by the Brazilian Bankruptcy Court for the VarigLog Estate to settle out the claims pursuant to the Settlement.

- The VarigLog Claim would be Allowed as an unsecured claim in the amount of $13.5 million (the "***Allowed VarigLog Estate Claim***").  On the Plan Effective Date, the VarigLog Estate shall receive the VarigLog Settlement Amount, to be funded in full, by the Participating Insurers and funded in the Escrow Account, in full and final satisfaction, compromise, settlement, and release of and in exchange for the Allowed VarigLog Estate Claim and any other cause of action pre-bankruptcy Varig Logistica S.A., the VarigLog Estate, the Foreign Representative, or any creditor of the VarigLog Estate on whose behalf it has purported to act and bring claims in a representative capacity or for whom it could have done so, has ever had or may ever bring against the Debtors.  The Debtors are also providing the VarigLog Estate with a release, and both the Debtors and the VarigLog Estate will provide the Participating Insurers with a release.

- Within fourteen (14) days of the Court's order granting final approval of the Motion, assuming at that time such order has become final and no longer subject to appeal, rehearing or re-argument, and other conditions precedent detailed in the Settlement, including that the Brazilian Bankruptcy Court has also approved the VarigLog Estate's participation in the Settlement, the Participating Insurers shall pay the amount of $13.5 million by ACH, federal wire, or check (subject to the sharing arrangement agreed to and memorialized in the Insurer Mediation), as and for payment in full of the VarigLog Settlement Amount, into the Escrow Account for the sole benefit of the VarigLog Estate, and each of the Participating Insurers shall be severally (and not jointly) liable to fund its agreed share of the Escrow Account.

- Subject to the VarigLog Estate's compliance in full with the Settlement, and solely upon confirmation of the Debtors' Amended Plan, on the Plan Effective Date the Participating Insurers shall provide necessary written direction to the escrow agent to

---

[2]     The summary of the Settlement provided for herein is provided solely for the convenience of the Court, and is not intended to be a comprehensive recitation of all of the terms of the Settlement.  To the extent that there is any inconsistency between the summary provided herein and the actual terms of the Settlement, the actual terms of the Settlement shall control.  Capitalized terms used but not otherwise defined in this summary shall have the meanings ascribed to such terms in the Settlement.

distribute the $13.5 million on deposit in the Escrow Account to the VarigLog Estate's designated recipient, for the benefit of the VarigLog Estate, as directed by counsel for the VarigLog Estate.  Until May 31, 2023 (as extendable by the VarigLog Estate in accordance with the Settlement, the "***Outside Date***"), the VarigLog Estate will use commercially reasonable efforts to support the Amended Plan and the distributions contemplated thereby, including but not limited to:

o   acting in good faith and taking all actions reasonably necessary to consummate the Amended Plan and Plan Distributions;

o   not objecting to the Debtors' professionals' interim and final fee applications (subject to certain caveats and reservations of rights);

o   not objecting to or contesting the creditor claim scheduled by Fund II-A;

o   if solicited, voting the VarigLog Claim in favor of the Amended Plan, and (in any event) not opting out of any of the Amended Plan's release provisions;

o   (a) upon approval of the Motion, (i) abating all of its pending motions in this Court from the date of approval through the Plan Effective Date, and (ii) refraining from seeking to reopen its appeals in the Southern District of New York or otherwise seeking an extension of the time in which it has the right to reopen the appeals arising out of the Chapter 11 Cases, in each case without the express written consent of the Debtors; and (b) upon the Plan Effective Date, once the VarigLog Estate has received the VarigLog Settlement Amount, dismissing with prejudice its Brazilian Action pending in against the Debtors in the Brazilian Bankruptcy Court;

o   subject to receipt of the VarigLog Settlement Amount, expressly consenting to the subsequent dismissal of any and all Brazilian claims currently pending against Debtors, their estates, affiliates, and each of their principals, directors, employees, agents, attorneys, advisors, insurers, successors and assigns;

o   seeking and evidencing to the Debtors and the Participating Insurers all approvals necessary in the Brazilian bankruptcy court overseeing the bankruptcy proceedings of the VarigLog Estate to allow the VarigLog Estate to enter into and abide in full by the terms of the Settlement (and providing evidence of such approvals to the Debtors and the Participating Insurers); and

o   supporting the Debtors' efforts to achieve a timely confirmation of the Amended Plan and consummation of the Chapter 11 Cases.

•   Upon entry of the Court's order approving the Motion, the VarigLog Estate and the Debtors shall cease and suspend all acts, proceedings, and matters currently pending against each other in the Brazilian courts.

•   The Settlement is conditioned upon (i) the entry of the Court's order approving the Motion, and (ii) approval by the Brazilian Bankruptcy Court.  The Court's order shall provide, among other things, that: (a) the VarigLog Estate shall receive payment of the

VarigLog Settlement Amount in full and final satisfaction of the Allowed VarigLog Estate Claim, (b) each of the parties acted in good faith in consummating the Settlement, and (c) upon the Effective Date of the Amended Plan, the automatic stay imposed by Bankruptcy Code § 362 is lifted if and to the extent necessary to permit (i) distribution of the funds deposited by the Participating Insurers into the Escrow Account as directed by the escrow agent to pay to the VarigLog Estate the VarigLog Settlement Amount, and (ii) distribution of the funds deposited by the Participating Insurers into an escrow account for Defense Costs, as directed by the escrow agent to pay to the Debtors and their estates for reimbursement of the Defense Costs.

- The Amended Plan will include customary Debtor and third-party releases, including in favor of each of the Participating Insurers, and the Debtors and the VarigLog Estate covenant and commit to support the Amended Plan, including the releases therein and the Insurer Release (subject to certain exceptions described in the Settlement). The Amended Plan will also include a permanent bar order as described in the Settlement.

- The Debtors shall use commercially reasonable efforts to obtain confirmation of the Amended Plan expeditiously, in the Debtors' sole discretion, consistent with the intent of the Settlement and the other matters pending in the Chapter 11 Cases.

- The Settlement contains other terms, conditions, and obligations of the VarigLog Estate, the Participating Insurers, and the Debtors.

## **Basis for Relief**

12.    Bankruptcy Rule 9019(a) provides that "on motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 428 (1968). Pre-plan settlements in chapter 11 cases "help clear a path for the efficient administration of the bankrupt estate, including any eventual plan. . . ." *Motorola, Inc. v. Official Comm. of Unsecured Creditors* (*In re Iridium Operating LLC*), 478 F.3d 452, 455 (2d Cir. 2007).

13.    In considering whether to approve a proposed settlement, "[i]t is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). Rather, "informed by the opinion of the parties, the [debtor], and counsel and its familiarity with the litigation, the bankruptcy court

must make a considered, independent judgment as to whether a settlement is fair and equitable and 'in the best interests of the estate.'" *In re Lehman Bros. Holdings, Inc.*, 435 B.R. 122, 134 (S.D.N.Y. 2010) (citations omitted).

14.     Importantly, the "settlement need not be the best that the debtor could have obtained." *Adelphia Commc'ns*, 327 B.R. at 159 (citing *In re Penn Cent. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979)).  Instead, the court need only "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *Id.* (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)).  The court may consider the opinion of the debtor that the settlement is fair and reasonable.  *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

15.     Courts in the Second Circuit evaluate whether a settlement is "fair and equitable" and thus worthy of approval after considering the following interrelated factors:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay" . . .; (3) the "paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement"; (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors"; and (7) "the extent to which the settlement is the product of arm's length bargaining."

*In re Iridium Operating LLC*, 478 F.3d at 462.

16.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Section 105 confers "broad equitable power upon bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code." *Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007).

**I. The Debtors and the Other Stakeholders Will Benefit from the Settlement in Light of the Risk of Complex and Protracted Litigation**

17.     The first two factors, a comparison of the benefits of settlement with likely rewards of litigation and the prospect of complex and protracted litigation, are the two most important *Iridium* factors.  *See Adelphia Commc'ns*, 327 B.R. at 160–64.  The Settlement overwhelmingly satisfies these two most influential *Iridium* factors, and the Court should approve it.

18.     The VarigLog Estate has asserted an immense claim of approximately $387 million against the Debtors, making resolution of the VarigLog Claim the gating item to successfully concluding these Chapter 11 Cases.  The Debtors and the VarigLog Estate have sparred in intense multijurisdictional litigation for years, including multiple lawsuits and appeals in Brazil, an adversary proceeding in Florida, and extensive contested matters since day one of these Chapter 11 Cases.  In addition, the VarigLog Estate has appealed multiple orders entered in these Chapter 11 Cases to the District Court, which have been dismissed without prejudice in light of the Settlement.[3]  Most recently, the Debtors and the VarigLog Estate were gearing up for a multi-day estimation trial on the merits of the VarigLog Claim (which was to be commenced April 25, 2023), likely to be followed by a contested confirmation hearing and with the prospect of appeals.

19.     Absent the Settlement, the Court would be required to decide contested issues of Brazilian and New York law, including a one-day hearing on expert evidence regarding issues of Brazilian law alone.  This Court would be required to estimate an approximately $387 million claim regarding alleged events and acts that occurred well over a decade ago.  Despite the Debtors' confidence in the merits of their defenses to the VarigLog Claim (both at U.S and Brazilian law), pursuing estimation carries inherent risk and uncertainty, particularly given the size of the damages

---

[3]     The dismissal is without prejudice to VarigLog Estate seeking to reopen the appeals until June 5, 2023.

asserted and the application of foreign law.  All the while, significant estate resources would need to be expended for the briefing and preparation required for a multi-day evidentiary hearing and any subsequent appeal.  It is for these reasons that this Court urged the parties to reach a settlement, expressing in no uncertain terms that settlement "is in everyone's best interests…both sides face exposure," (March 17, 2023 Hr'g Tr. at 27: 20-21; 28: 5) and further opined at the most recent status conference upon the announcement that an agreement-in-principle had been reached, that "this is a great development because everybody benefits from having a final answer" (April 14, 2023 Hr'g Tr. at 16:7-9).  The Court further commended the parties for the "excellent work that got you to a point of being able to make a well-informed decision of where you should end up." *Id.* at 16:9-11.

20.    In contrast with the prospect of continued litigation, the Settlement "provide[s] the Debtors with certainty on issues that, if not resolved favorably, could have a devastating impact on the Debtors." *Adelphia Commc'ns*, 327 B.R. at 160.  Key to the Debtors' determination to settle with the VarigLog Estate are that the Settlement Amount – fully funded by the Participating Insurers – represents a substantial discount of over 95% of the asserted VarigLog Claim, and that Judge Peck recommended the Settlement.  The Settlement resolves this lengthy and hard-fought litigation between the Debtors and the VarigLog Estate, offers certainty to the Debtors and their investors and stakeholders, and allows Debtors to clear the final hurdle to resolution of these Chapter 11 Cases.  Accordingly, the Debtors determined, in the exercise of their business judgment, that the benefits of Settlement far outweighed the potential but uncertain benefits of continued litigation with the VarigLog Estate.

**II. The Settlement is the Product of Months of Mediation Undertaken by Competent
and Experienced Counsel and Overseen by an Experienced and Knowledgeable
Bankruptcy Judge and a Renowned Mediator**

21.     The parties' initial discussions after the Court ordered the parties to mediation were

unsuccessful.  However, in October 2022, the Debtors, the VarigLog Estate, and the Debtors'

insurers re-engaged in mediation discussions which continued for several months, aided by Judge

Peck.  In February 2023, the insurers agreed to mediate among themselves to attempt to resolve

certain coverage disputes, with mediation overseen by Ms. Yoshida.  Both mediations caused each

of parties to consider the risks of continued litigation and the benefits of having an assured global

outcome to the longstanding, expensive and heated litigation.  The mediators, Judge Peck and Ms.

Yoshida, played an invaluable role in bringing the parties—who had been diametrically opposed

and staunch adversaries—to agree on the Settlement.  The Court's decisions on abstention and stay

relief, summary judgment and the scope of an estimation hearing, issued during the course of the

Mediation, also brought clearer focus to the issues in dispute.

22.     The Debtors' counsel, counsel to the VarigLog Estate, and counsel to the

Participating Insurers have decades of experience in bankruptcy disputes and complex litigation

matters and have negotiated resolutions of many challenging issues.  As evidenced by the years of

litigation between the Debtors and the VarigLog Estate and the myriad of contested issues (and

appeals) during these Chapter 11 Cases, resolution of the VarigLog Claim was certainly at arms'

length.  While the legal issues raised by the VarigLog Claim are complex, the parties successfully

negotiated an amount and a process that would be satisfactory to all parties, guided to a significant

degree by Judge Peck, an experienced and knowledgeable former bankruptcy Judge, and Ms.

Yoshida, an experienced mediator with particular expertise in insurance coverage issues.  These

factors, which help make "a full and fair assessment of the wisdom of the compromise" and carry

"considerable weight", *see Adelphia Commc'ns*, 327 B.R. at 164, all weigh in favor of the Court approving the Settlement.

23.     All of the important *Iridium* factors[4], and those that are relevant to consider in a bankruptcy settlement, point in favor of approving the Settlement.  The Debtors submit that "the Settlement is in the best interests of creditors as a whole and the estate because it caps the Debtors' risk", "will eliminate additional expenses and uncertainty with regard to this matter", and "presents an important step in winding-down the Debtors' cases" as expeditiously and cost-effectively as possible.  *Pinsker v. Borders, Inc.* (*In re BGI, Inc.*), 465 B.R. 365, 382 (Bankr. S.D.N.Y. 2012). The Court should approve the Settlement.

## Conclusion

24.     In short, the Settlement is the decisive breakthrough in these Chapter 11 Cases, enabling the Debtors to quickly seek confirmation of the Amended Plan consistent with the Debtors' prior settlements, all on an expeditious timetable that will ensure prompt distributions to stakeholders.  Debtors believe that the Settlement is an excellent result for the Debtors' estates and their stakeholders, and that all parties in interest will benefit from this achievement. In the Debtors' business judgment, the Settlement is reasonable and in the best interests of the Debtors, their estates, and creditors and other parties in these Chapter 11 Cases.  The compromise embodied in the Settlement is the product of extensive good-faith and arms'-length negotiations among the Debtors, the VarigLog Estate, and the Participating Insurers, overseen by Judge Peck and Ms. Yoshida.  Critically, the Settlement paves the way for an expeditious consensual confirmation of

---

[4]     The sixth *Iridium* factor, "the nature and breadth of releases to be obtained by officers and directors," is irrelevant here because the decision-makers were disinterested and the release is not unduly broad.  *See In re Motors Liquidation Co.*, 555 B.R. 355, 368 (Bankr. S.D.N.Y. 2016); *Adelphia Commc'ns*, 327 B.R. at 165.

the Amended Plan and prompt distributions to stakeholders.  The *Iridium* factors overwhelmingly weigh in support of the Settlement, and the Settlement should be approved.

## **Notice**

25.    Notice of this Motion has been provided to (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the United States Attorney's Office for the Southern District of New York; (e) the New York State Attorney General; (f) the United States Attorney's Office for the District of Delaware; (g) the Delaware Attorney General; (h) the Cayman Islands General Registry Department; (i) VRG, VarigLog, and HJDK, and their respective counsel; (j) to the extent not listed herein, those parties requesting notice pursuant to Bankruptcy Rule 2002; and (k) all entities believed to have or be claiming an interest in the subject matter of the Order or who, it is believed, otherwise would be affected by the Order.

## **No Prior Request**

26.    No prior request for the relief sought in this application has been made to this or any other court.

[*Remainder of page intentionally left blank*]

13

WHEREFORE, the Debtors respectfully request entry of the Order, substantially in the

form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other

relief as is just and proper.

Dated: April 20, 2023              **SIMPSON THACHER & BARTLETT LLP**
New York, NY

                                   */s/ Elisha D. Graff*
                                   Elisha D. Graff
                                   Kathrine A. McLendon
                                   Jamie J. Fell
                                   Dov Gottlieb
                                   425 Lexington Avenue
                                   New York, NY 10017
                                   Tel: (212) 455-2000
                                   Fax: (212) 455-2502

                                   -and-

                                   Tyler B. Robinson
                                   Lauren W. Brazier (admitted *pro hac vice*)
                                   CityPoint
                                   One Ropemaker Street
                                   London EC2Y 9HU, England
                                   Tel: +44-(0)20-7275-6500
                                   Fax: +44-(0)20-7275-6592

                                   *Counsel to the Debtors and Debtors-in-Possession*

<u>**Exhibit A**</u>

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| MatlinPatterson Global Opportunities Partners II L.P., *et al.*, | ) | Case No. 21-11255 (DSJ) |
| | ) | |
| Debtors.[1] | ) | (Jointly Administered) |
| | ) | |

## ORDER APPROVING THE SETTLEMENT AMONG DEBTORS, THE VARIGLOG ESTATE, AND THE PARTICIPATING INSURERS

Upon the motion (the "***Motion***")[2] of the Debtors for entry of an order (this "***Order***")

approving the Settlement among Debtors, the VarigLog Estate, and the Participating Insurers, that

is memorialized in the settlement term sheet attached as **Exhibit B** to the Motion; and it appearing

that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 1334 and 157, and

the *Amended Standing Order of Reference from the United States District Court for the Southern*

*District of New York*, dated January 31, 2012; and it appearing that this is a core matter pursuant

to 28 U.S.C. § 157(b)(2) and that this Court may enter a final order consistent with Article III of

the United States Constitution; and it appearing that venue of the Chapter 11 Cases and of the

Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and due and sufficient notice of the

Motion having been provided under Bankruptcy Rule 2002, and it appearing that no other or

further notice need be provided; and this Court having determined that the relief requested in the

Motion is in the best interest of the Debtors' estates, their creditors, and other parties in interest;

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, if any, are: MatlinPatterson Global Opportunities Partners II L.P. (8284); MatlinPatterson Global Opportunities Partners (Cayman) II L.P. (8246); MatlinPatterson Global Partners II LLC (6962); MatlinPatterson Global Advisers LLC (2931); MatlinPatterson PE Holdings LLC (6900); Volo Logistics LLC (8287); MatlinPatterson Global Opportunities Partners (SUB) II L.P. (9209). The location of the Debtors' address is: 300 East 95th Street, Suite 102, New York, New York 10128.

[2] Capitalized terms used but not otherwise herein defined shall have the meanings ascribed to them in the Motion or the Settlement, as the case may be.

and the legal and factual bases set forth in the Motion having established just cause for the relief

granted herein; and after due deliberation thereon and sufficient cause appearing therefor, it is

HEREBY ORDERED THAT:

1.      The Motion is hereby GRANTED.

2.      Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019, the

Settlement is approved; *provided that* such approval is conditioned upon the Brazilian bankruptcy

court's authorization for the VarigLog Estate to enter into and perform under the Settlement.  The

terms and conditions of the Settlement are incorporated into this Order as if fully set forth herein.

3.      Payment of the VarigLog Settlement Amount shall be in full satisfaction of the

Allowed VarigLog Estate Claim.

4.      Each of the Debtors, the VarigLog Estate, and the Participating Insurers acted in

good faith in negotiating and consummating the Settlement.

5.      Upon the Effective Date of the Debtors' Amended Plan, the automatic stay imposed

by Bankruptcy Code § 362 is lifted if and to the extent necessary to permit (i) distribution of the

funds deposited by the Participating Insurers into the Escrow Account as directed by the escrow

agent to pay to the VarigLog Estate the VarigLog Settlement Amount, and (ii) reimbursement of

the Defense Costs.

6.      The Debtors are authorized to execute and deliver all instruments and documents,

and take such other action as may be necessary or appropriate, to implement and effectuate the

relief granted by this Order.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

New York, New York
Dated:  _____, 2023

_____
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE

## Exhibit B

**Settlement Term Sheet**

**In re MatlinPatterson Global Opportunities Partners II L.P.,** *et al.,*
**Case No. 21-11255 (Bankr. S.D.N.Y.)**

<u>**SETTLEMENT TERM SHEET**</u>

This Settlement Term Sheet (this "<u>Term Sheet</u>") describes the terms of a settlement (the "<u>Settlement</u>") between (i) MatlinPatterson Global Opportunities Partners II L.P. and each of its affiliated debtors and debtors-in-possession (the "<u>Debtors</u>") in the jointly administered cases captioned *In re MatlinPatterson Global Opportunities Partners II L.P.,* et al., Case No. 21-11255 (DSJ) (the "<u>Chapter 11 Cases</u>") pending before the United States Bankruptcy Court for the Southern District of New York (the "<u>Court</u>"), (ii) Vânio Cesar Pickler Aguiar (the "<u>Foreign Representative</u>"), not individually but as Judicial Administrator of the bankruptcy estate of Varig Logistica S.A. ("<u>VarigLog</u>", and such bankruptcy estate, the "<u>VarigLog Estate</u>"), and (iii) each of the Debtors' insurance carriers listed below as a Party (together, the "<u>Participating Insurers</u>").

All capitalized terms used but not defined herein shall have the meanings ascribed to them in the *Debtors' First Amended Joint Chapter 11 Plan of Liquidation* filed on September 30, 2022 [Docket No. 623] (the "<u>Plan</u>").

Except as otherwise set forth herein, this Term Sheet will be binding when it is in a final and agreed form and executed by all parties, provided that if the 9019 Motion (as defined below) or the Brazilian Approval Motion (as defined below) is not approved as described herein, the Settlement and this Term Sheet shall be null and void in their entirety.  Until the 9019 Motion and the Brazilian Approval Motion are approved by the Court and the Brazilian Bankruptcy Court, respectively, nothing herein shall be deemed to be a stipulation, concession, admission, or probative of any view, fact, opinion, position, or otherwise.

| **Parties:** | Parties to the Settlement are : |
|---|---|
| | 1.  the Debtors; |
| | 2.  the Foreign Representative on behalf of the VarigLog Estate; and |
| | 3.  the following Participating Insurers: Zurich American Insurance Company (Policy Nos. EOC 5747305-00 (3/31/14 – 3/31/15) and EOC-5747305-02 (3/31/15 – 3/31/18)) ("<u>Zurich</u>"); Freedom Specialty Insurance Company (Excess Policy Nos. XMF1702249 (3/31/17 – 3/31/18) and XMF1300696 (3/31/13 – 3/31/14)); Argonaut Insurance Company (Policy No. MLX 7601322-02 (3/31/17 – 3/31/18)); Great American Insurance Company (Policy No. PEX2788006 3/31/13 – 3/31/14)); Illinois National Insurance Company (Policy No. 01-880-11-49 (3/31/13 – 3/31/14); and Starr Indemnity & Liability Company (Policy No. SISIXFL21081713 (3/31/13 – 3/31/14)).  The Participating Insurers do not consent to the jurisdiction of the Court, except to the extent necessary for the approval, implementation and enforcement of the Settlement embodied by this Term Sheet and in each case, solely through the Plan Effective Date, and all Parties agree that, subject solely to the foregoing exception, nothing in this Term Sheet shall in any way expand the jurisdiction of the Court over the Participating Insurers or, |

| | in any way, constitute a consent to jurisdiction or waiver of any jurisdictional defense. The Participating Insurers do not consent to any jurisdiction of the Brazilian Bankruptcy Court, without exception, and all Parties agree that nothing in this Term Sheet shall in way provide jurisdiction to the Brazilian Bankruptcy Court over the Participating Insurers or in way constitute a consent to jurisdiction or waiver of any jurisdictional defense. |
|---|---|
| **VarigLog Settlement Amount:** | The "VarigLog Settlement Amount" shall be $13,500,000.00, not subject to dilution. For purposes of the Plan, the VarigLog Estate claim shall be allowed in an amount equal to the VarigLog Settlement Amount (the "Allowed VarigLog Estate Claim"), and, under the Plan, shall be paid in full with funds from the Participating Insurers on deposit in the Escrow Account (as defined hereinafter), subject to all of the terms and conditions herein.<br><br>By virtue of such allowance and subsequent payment in full, each of the Debtors and their estates, their principals, directors, employees, affiliates (including, for the avoidance of doubt, non-Debtor affiliate Volo do Brasil, S.A. (n/k/a VDB Investimentos S.A.) whom Debtor Volo Logistics shall cause to participate in the Debtor Release as defined herein), agents, successors and assigns shall be deemed to have released the VarigLog Estate, VarigLog, the Foreign Representative, and their respective principals, directors, employees, affiliates, agents, attorneys and advisors, successors and assigns from all claims, rights or causes of action of every kind and nature whatsoever, in any forum or jurisdiction and under any applicable law, whether or not presently known or unknown to the parties, foreseen or unforeseen, accrued or unaccrued, and whether arising in equity or under common law or statute or otherwise, in each case that arise out of or relate in any way to any of the Debtors from the beginning of time through the Plan Effective Date (the "Debtor Release"). For the avoidance of doubt, any claim filed in the Brazilian bankruptcy of VarigLog by any of the Debtors or their affiliates including, but not limited to, the claim filed by Volo Logistics, LLC for 110,329,086.66 Brazilian Reais, will be withdrawn on or as soon as reasonably practicable after the Plan Effective Date.<br><br>On the Plan Effective Date (which may not be later than the Outside Date, as defined below), the VarigLog Estate shall receive the VarigLog Settlement Amount, to be paid in full, with funds from the Escrow Account, in full and final satisfaction, compromise, settlement, and release and discharge of the Allowed VarigLog Estate Claim, inclusive of all fees, expenses, interest, costs, losses or amounts of any nature whatsoever and any and all other rights, claims or causes of action that the VarigLog Estate, VarigLog, the Foreign Representative, the Judicial Administrator of the VarigLog Estate (or any of their respective predecessors, successors, affiliates, assigns or any person acting by, through, under or in concert with pre-bankruptcy Varig Logistica S.A., or the VarigLog Estate or any of them, including all creditors of the |

2

| | |
|---|---|
| | VarigLog Estate on whose behalf it has purported to act and bring claims in a representative capacity or for whom it could have done so) has, has ever had or may ever have against Debtors and their estates, affiliates, and each of their respective principals, directors, employees, agents, attorneys, insurers, advisors, successors and assigns, from every claim of every kind and nature whatsoever, in any forum or jurisdiction and under any applicable law, whether or not presently known or unknown to the parties, foreseen or unforeseen, accrued or unaccrued, and whether arising in equity or under common law or statute or otherwise, in each case that arise out of or relate in any way to any of the Debtors from the beginning of time through the Plan Effective Date (the "VarigLog Release").  The Amended Plan (as defined below) will provide that the VarigLog Estate will receive the VarigLog Settlement Amount in full and final satisfaction of the Allowed VarigLog Estate Claim.<br><br>The Settlement and this Term Sheet shall be subject to (i) approval by order of the Court and (ii) approval of the Brazilian Bankruptcy Court as set forth in the Brazilian Approval Motion (as defined below).  The order approving the 9019 Motion shall provide, among other things, that: (a) payment of the VarigLog Settlement Amount shall be in full and final satisfaction of the Allowed VarigLog Estate Claim, (b) each of the Parties acted in good faith in consummating the Settlement, (c) upon the Effective Date of the Debtors' Amended Plan, the automatic stay imposed by Bankruptcy Code § 362 is lifted if and to the extent necessary to permit (i) distribution of the funds deposited by the Participating Insurers into the Escrow Account as directed by the escrow agent to pay to the VarigLog Estate the VarigLog Settlement Amount, and (ii) distribution of the funds deposited by the Participating Insurers into an escrow account for Defense Costs (as defined below), as directed by the escrow agent to pay to the Debtors and their estates reimbursement of the Defense Costs. |
| **Participating Insurer Release** | The Amended Plan will include customary Debtor and third-party releases, including in favor of each of the Participating Insurers, and Debtors and the VarigLog Estate hereby covenant and commit to support the Amended Plan, including the releases therein, and, upon receipt of the VarigLog Settlement Amount, to release and forever discharge the Participating Insurers and their respective predecessors, successors, assignees, affiliates, parents, subsidiaries, shareholders, designees, members, partners, directors, officers, employees, agents, representatives, attorneys, insurers and reinsurers from any and all demands, claims, potential claims, rights, damages, debts, liabilities, accounts, attorneys' fees, obligations, costs, expenses, liens, actions and causes of action of every kind and nature whatsoever, in any court or forum, domestic or foreign, whether now known or unknown, asserted or unasserted, which they now have, own or hold, or at any time heretofore had, owned or held, or could, shall or may hereafter have, own, or hold arising out of, related to, based upon, by reason of, or in any way involving, directly or indirectly, or in whole or in part, (i) the Allowed VarigLog Estate Claim; (ii) any and all claims made or |

| | |
|---|---|
| | lawsuits commenced by the Foreign Representative or the VarigLog Estate in the Brazilian Bankruptcy Courts against the Debtors (the "Brazilian Action"); (iii) any and all other rights, claims or causes of action that the VarigLog Estate, VarigLog, the Foreign Representative (or any of their respective predecessors, successors, affiliates, assigns or any person acting by, through, under or in concert with pre-bankruptcy Varig Logistica S.A., or the VarigLog Estate or any of them, including all creditors of the VarigLog Estate on whose behalf it has purported to act and bring claims in a representative capacity or for whom it could have done so) has, has ever had or may ever have against the Participating Insurers; (iv) its appeals of any previously issued orders by the Court; and (v) and any of the facts or circumstances alleged by the VarigLog Estate in any matter (including, but not limited to, the Brazilian Action, the Allowed VarigLog Estate Claim, or any claim of any creditor of the VarigLog Estate on whose behalf it has purported to act and bring claims in a representative capacity or for whom it could have done so), including, without limitation, all loss incurred or to be incurred in connection with the Allowed VarigLog Estate Claim and the defense or settlement thereof (the "Insurer Release"), except that the foregoing shall not release claims by the Debtors against the Participating Insurers for (x) reimbursement of defense expenses incurred in connection with the investigation and defense of the VarigLog Estate Claim, and (y) reimbursement of defense expenses incurred in connection with the investigation and defense of the claims asserted against the Debtors by or on behalf of HJDK Aerospacial S.A., in each case in an amount previously agreed between the Debtors and the Participating Insurers (the "Defense Costs") and which amount, when reimbursed pursuant to such agreement between the Debtors and the Participating Insurers, shall be in full and final satisfaction of Debtors' claims against the Participating Insurers for reimbursement of Defense Costs under their respective policies noted above. Neither of the foregoing reimbursements in subclauses (x) and (y) will be deducted from or paid from the $13,500,000.00 deposited by the Participating Insurers into the Escrow Account.<br><br>The Participating Insurers likewise covenant not to unreasonably object to the Debtor and third-party releases embodied in the Amended Plan in favor of the Debtors and the VarigLog Estate.<br><br>The Participating Insurers shall have a consent right over the Insurer Release provisions of the Amended Plan. |
| **VarigLog Estate's Commitments:** | The VarigLog Estate will use commercially reasonable efforts to support and effectuate, as applicable, the Plan (as amended to reflect the Settlement described in this Term Sheet, and any additional amendments consistent with this Term Sheet, the "Amended Plan") and the distributions contemplated to the VarigLog Estate in this Term Sheet (the "Plan Distributions"), including but not limited to the following: |

4

(i)     act in good faith and take all actions reasonably necessary to consummate the Amended Plan and the Plan Distributions in accordance with the terms and conditions of this Term Sheet and the Amended Plan up until the occurrence of the Outside Date. "Outside Date" for purposes of this Term Sheet and the Settlement shall mean May 31, 2023, *provided* that the Outside Date may be extended by the VarigLog Estate in its sole discretion with such extension to be documented in writing (email from the VarigLog Estate's counsel shall suffice);

(ii)    not take any action to object to, delay, impede or otherwise hinder Debtors' professionals from receiving interim and final allowances, as applicable and payment of professional fees, *provided*, *however*, that the Debtors and its professionals acknowledge that the VarigLog Estate has reserved and preserved all of its rights to object to the Debtors' professionals' fees until the VarigLog Settlement Amount is indefeasibly paid, at which time all such rights shall be permanently waived. If the Outside Date occurs without the VarigLog Estate receiving the VarigLog Settlement Amount, the VarigLog Estate may assert its rights with respect to payments sought by or made to the Debtors' professionals;

(iii)   not contest or object to the allowance, amount, priority or payment of the claim scheduled by Debtors in favor of MP II Preferred Partners L.P. ("Fund II-A") or any settlement or proposed resolution of such claim, or seek any affirmative relief against Fund II-A, so long as (1) the bankruptcy cases remain in Chapter 11, and (2) the Debtors continue to diligently prosecute the Amended Plan which provides (a) for the VarigLog Estate to receive the full VarigLog Settlement Amount and (b) that Fund II-A will not get paid before the Plan Effective Date;

(iv)    if solicited in accordance with the Solicitation Procedures, vote the entire Allowed VarigLog Estate Claim in favor of the Amended Plan, which will provide for the payment in full of the VarigLog Settlement Amount on the Plan Effective Date, and not opt-out of any of the Amended Plan's release provisions;

(v)     affirmatively support Debtors' efforts to achieve a timely confirmation of the Amended Plan and consummation of the Chapter 11 Cases;

(vi)    (a) upon approval of the 9019 Motion, (i) abate all of its pending motions in the Court from the date of approval of the 9019 Motion through the Plan Effective Date, and (ii) refrain from seeking to reopen its appeals in the Southern District of New York or otherwise seek an extension of the time in which it has the right to reopen the appeals arising out of the Chapter 11 Cases, in each case without the express written consent of the Debtors (email from Debtors' counsel shall

52620007.13

suffice), and (b) upon the Plan Effective Date, once the VarigLog Estate has received the VarigLog Settlement Amount, the VarigLog Estate will dismiss with prejudice its Brazilian Action pending against the Debtors in the Brazilian Bankruptcy Court;

(vii)    subject to receipt of the VarigLog Settlement Amount, to expressly consent to the subsequent dismissal with prejudice of any and all Brazilian claims currently pending against Debtors, their estates, affiliates, and each of their principals, directors, employees, agents, attorneys, advisors, insurers, successors and assigns;

(viii)    seek and evidence to the Debtors and the Participating Insurers all approvals necessary in the Brazilian Bankruptcy Court overseeing the bankruptcy proceedings of the VarigLog Estate to allow the VarigLog Estate to enter into and abide in full by the terms of the Settlement ("Brazilian Approval Motion"); and

(ix)    not object to, delay, impede, or take any other action inconsistent with, the Settlement and this Term Sheet, the Amended Plan and the Plan Distributions, including filing any motion, pleading, or other document with the Court or any other court (including any modifications or amendments thereof) that, in whole or in part, is not consistent with this Term Sheet or the Amended Plan. In furtherance of the foregoing, the VarigLog Estate and the Debtors shall, upon approval of the 9019 Motion, cease and suspend all acts, proceedings, and matters currently pending against each other in the Brazilian courts.

If the Outside Date shall have occurred without the VarigLog Estate indefeasibly receiving the VarigLog Settlement Amount, then each of VarigLog's Commitments in provisions (i) – (ix) above shall terminate and shall be null and void; *provided*, that if the VarigLog Estate receives the VarigLog Settlement Amount following the Outside Date, either during any Chapter 7 case of the Debtors or following the dismissal of the Chapter 11 Cases, the VarigLog Release (including as to Fund II-A) and the Debtor Release and all of the foregoing commitments (to the extent still applicable) shall again be effective.

| | |
|---|---|
| **Participating Insurers' Commitments** | It shall be a condition precedent to the Participating Insurers' obligations under the Settlement, that a separate settlement agreement pursuant to the Insurer Mediation (as defined below), which will include, among other things, all of the usual and customary terms, releases, the sharing arrangements among the Participating Insurers, and Defense Costs reimbursements referenced herein (including releases relating to the Defense Costs), shall have been fully agreed and executed by the Debtor and the Participating Insurers.<br><br>Within fourteen (14) days of final approval of the 9019 Motion, and assuming at the end of such 14-day period, the approval, including the Court's order, is |

6

| | |
|---|---|
| | final and no longer subject to appeal, rehearing or re-argument, and subject to the condition precedent described in the preceding paragraph and receipt of the required documentation defined below, the Participating Insurers shall each pay their agreed share of the total amount of $13,500,000.00 by ACH, federal wire, or by check (subject to the sharing arrangement agreed to and memorialized in the mediation presided over by Ms. Michelle Yoshida (the "Insurer Mediation")), as and for payment in full of the VarigLog Settlement Amount, into an escrow account to be established by Zurich (or one of the other Participating Insurers or another third-party (the "Escrow Account")[1] for the sole benefit of the VarigLog Estate, and each of the Participating Insurers shall be severally (and not jointly) liable to fund its agreed share of the VarigLog Settlement Amount into the Escrow Account for the Allowed VarigLog Estate Claim; *provided* that at least fourteen (14) prior to funding, the Participating Insurers shall be entitled to request and receive all documentation reasonably necessary to make payments in accordance with the foregoing, including form W-9s or other similar documentation.<br><br>Subject to the VarigLog Estate's compliance in full with its commitments set forth in this Term Sheet under the heading "VarigLog Estate's Commitments" above, and solely upon confirmation of the Debtors' Amended Plan, on the Plan Effective Date the Participating Insurers shall provide necessary written direction to the escrow agent to distribute the $13,500,000.00 on deposit in the Escrow Account to Sequor Law, for the benefit of the VarigLog Estate, as directed by counsel for the VarigLog Estate.<br><br>For the avoidance of doubt, the Participating Insurers' Commitments to fund their respective shares of the VarigLog Settlement Amount are expressly conditioned upon final approval of both the 9019 Motion by the Court, and the Brazilian Approval Motion by the Brazilian Bankruptcy Court, respectively. |
| Debtors' Commitments: | The Debtors shall use commercially reasonable efforts to promptly prosecute and seek approval of the motion seeking approval of the Settlement set forth in this Term Sheet (the "9019 Motion").  The VarigLog Estate and the Participating Insurers shall be afforded reasonable opportunity to review and comment on the 9019 Motion.  Debtors' counsel will undertake the due prosecution of and defense of the 9019 Motion, including replying to and/or opposing any and all objections and/or responses interposed to the 9019 Motion.<br><br>The Amended Plan shall state that it shall be a condition precedent to the occurrence of the Effective Date of the Amended Plan, that no order, consent decree, or other judicial determination, whether in the U.S., Brazil or anywhere else, shall have been entered and remain in effect prohibiting or otherwise |

---

[1]    The identity of the financial institution acting as escrow agent, the location of the escrow account and the account number, shall be disclosed to the Parties' counsel promptly upon the account being opened.

| | |
|---|---|
| | restraining, in whole or in part, distribution on the Effective Date of the $13,500,000.00 in funds on deposit in the Escrow Account to pay in full, in Cash, the VarigLog Settlement Amount.<br><br>The Debtors shall use commercially reasonable efforts to obtain confirmation of the Amended Plan expeditiously, in the Debtors' sole discretion, consistent with the intent of this Settlement and the other matters pending in the Chapter 11 Cases, and the order confirming the Amended Plan shall also include the terms of a permanent bar order (whose terms will be incorporated in the Amended Plan) which will permanently bar all barred persons and entities from commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves, in any court of forum, domestic or foreign, any actions, cause and causes of action, claims, counterclaims, crossclaims, suits, proceedings, damages, punitive damages, costs, expenses and attorneys' fees, demands and liabilities whatsoever against the Debtors and/or the Participating Insurers arising out of, related to, based upon, by reason of, or in any way involving, directly or indirectly, or in whole or in part, the (i) the Allowed VarigLog Estate Claims, (ii) the Brazilian Action, and/or (iii) and any of the facts or circumstances alleged by the VarigLog Estate in any matter (including, but not limited to, any claim of any creditor of the VarigLog Estate on whose behalf it has purported to act and bring claims in a representative capacity or for whom it could have done so). The Participating Insurers shall have a consent right over the provisions of the bar order of the Amended Plan as it concerns barred claims against the Participating Insurers.<br><br>Upon approval of the 9019 Motion, the Debtors shall abate all of their pending motions and requests for relief against the VarigLog Estate, the Foreign Representative, and each of their employees, agents, attorneys, advisors, insurers, successors and assigns in the Court and the Brazilian court from the date of approval of the 9019 Motion through the Plan Effective Date. |
| **Settlement Implementation / Plan Mechanics:** | I. The Plan will be amended to reflect and implement the Settlement in a form reasonably acceptable to the Parties. The Amended Plan will contain releases of the Debtors, the Participating Insurers, and their respective affiliates and related parties at least to the extent provided herein and to the fullest extent legally permissible, which the VarigLog Estate will consent to by voting to accept the Amended Plan, if solicited, and not opting out of any of the Amended Plan's release provisions.<br><br>II. Debtors and the VarigLog Estate acknowledge that while this Settlement is a bilateral settlement, not subject to or conditioned upon achieved settlements with VRG or HJDK, the Parties' ability to implement this Settlement may be affected by the pendency and status of the VRG and HJDK Settlements. Therefore, this Settlement may be implemented in one of a number of manners, at the discretion of the Debtors, and subject to the consent of the Participating Insurers, which shall not be unreasonably |

8

| | |
|---|---|
| | withheld, subject to ensuring payment in full of the VarigLog Settlement Amount in a timely manner. |
| | III. As discussed with the Court on the record, Debtors may seek a combined hearing on shortened notice for the Court to consider approval of the Debtors' Disclosure Statement and confirmation of the Debtors' Amended Plan (such hearing, the "Combined Hearing"). The VarigLog Estate and the Participating Insurers consent to the Combined Hearing on any shortened notice that is otherwise practicable and agreeable to the Debtors and the Court. |
| | IV. If the Outside Date has occurred and the VarigLog Estate has not been indefeasibly paid the VarigLog Settlement Amount, the Debtors shall not contest the dismissal or conversion of the Chapter 11 Cases; *provided*, that if the Debtors seek dismissal of the Chapter 11 Cases, the VarigLog Estate agrees to affirmatively support (including by filing a pleading with the Court, if requested by the Debtors) the Debtors' request for dismissal, and to refrain from exercising any of its rights hereunder that are exercisable on the Outside Date for a period of 60 days following the Outside Date, so long as the Debtors are diligently pursuing such dismissal; *provided further*, that in any such dismissal, the Debtors agree to pay the VarigLog Settlement Amount concurrently with the dismissal order and the VarigLog Estate agrees to be bound by the VarigLog Release and the Debtors agree to be bound by the Debtor Release. A copy of the dismissal order shall be provided to the Participating Insurers. |
| | V. Each of the Debtors, the VarigLog Estate and the Participating Insurers agrees to undertake any other actions and to execute and deliver such other documents as may be reasonably required to effectuate the purpose of this Settlement, including the dismissal with prejudice of any and all claims brought by VarigLog Estate against the Debtors. |
| **9019 Documentation:** | The Settlement and Term Sheet shall be governed by the internal laws of the State of New York without regard its conflict of laws principles. The Debtors' obligations shall be subject to satisfaction of the requirements of Bankruptcy Rule 9019 and the Bankruptcy Code and Rules, including authorization by the Court. Any dispute arising out of or in connection with the Settlement and this Term Sheet shall be subject to the exclusive jurisdiction of the Court. |

9

**MatlinPatterson Global Opportunities Partners II L.P.**
**MatlinPatterson Global Opportunities Partners (Cayman) II L.P.**
**MatlinPatterson Global Opportunities Partners (SUB) II L.P.**
**MatlinPatterson Global Advisers LLC**
**MatlinPatterson Global Partners II LLC**
**MatlinPatterson PE Holdings LLC**
**Volo Logistics LLC**

**By:** _____

Name:  Matthew Doheny
Title:   Chief Restructuring Officer


**Vânio Cesar Pickler Aguiar, not individually but as**
**Judicial Administrator and Foreign Representative**
**of the Bankruptcy Estate of Varig Logistica S.A.**

**By:** _____

Name:
Title:


**Zurich American Insurance Company**

**By:** _____

Name:
Title:


**Freedom Specialty Insurance Company**

**By:** _____

Name:
Title:


**Argonaut Insurance Company**

**By:** _____

Name:
Title:


10

**Great American Insurance Company**

**By:** _____

Name:
Title:

**AIG Claims, Inc. on behalf of
Illinois National Insurance Company**

**By:** _____

Name:
Title:

**Starr Indemnity & Liability Company**

**By:** _____

Name:
Title:

52620007.13